WATSON INDUSTRIES, INC., v. EUGENE G. SHAW, COMMISSIONER OF
REVENUE OF NORTH CAROLINA.

(Filed 5 March, 1952.)

1. **Statutes § 5a—**

Ordinary words of a statute must be given their natural, approved, and recognized meaning.

2. **Taxation § 30—**

Fabricated parts manufactured for, and used by the purchaser in the erection or construction of radio towers in this State are building materials subject to the excise tax of 3%, and taxpayer's contention that each radio tower was but a single purchase upon which the tax was limited to fifteen dollars is untenable, G.S. 105-187. "Building" and "structure" are synonymous, and a radio tower is a structure within the meaning of the statute.

3. **Same—**

That parts for a structure are practically worthless singly or in combinations less than required for the unit is immaterial in the levy of sales tax, the purchase price being the yardstick by which the tax is to be measured.

4. **Same: Constitutional Law § 31—**

The imposition of a sales tax on parts or materials used in the erection of radio towers, even though such parts are shipped from out of State, is

not a burden upon interstate commerce, since at the time the tax is assessed the property has reached the end of its interstate transportation and has become a part of the common mass of property within the State.

**5. Taxation § 30—**

An excise tax is a tax levied upon the sale or consumption of personal property.

**6. Same—**

A use tax is a tax on the enjoyment of that which has been purchased.

**7. Same—**

No tax is imposed under G.S. 105-220 unless there has been (1) a purchase of tangible personal property, (2) from a retailer (3) for storage, use or consumption within this State; and (4) title to or possession of such property passes from the retailer to the purchaser.

**8. Same—**

The rental price of transcriptions used by a radio station for rebroadcasting recorded programs, which transcriptions are then returned to the lessor, is not subject to the tax under G.S. 105-220, since such recordings are not in the "possession" of the radio station within the meaning of the law. "Custody" and "possession" are not synonymous, but possession implies custody with the added present right to control and dispose of the property at the possessor's pleasure to the exclusion of others.

**9. Statutes § 5a—**

A word or phrase of a statute may not be interpreted out of context so as to render it inharmonious to the intent and tenor of the act, but must be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit.

**10. Taxation § 30—**

The words "loan, lease, rental, or license" as used in G.S. 105-219 (c) must be read in context in conformity with the intent of the statute to impose upon the storage, use, or consumption within this State of tangible personal property which has been purchased by a local resident, a use tax corresponding to and equalizing the sales tax imposed by G.S. 105, Art. V, and the words cannot be enlarged to embrace a transaction under which a resident merely leases property for nondestructive or unconsuming use and then returns the goods to lessor, so that he has "custody" without "possession" within the legal significance of that term.

**11. Statutes § 5a—**

The legislative intent is the guiding star in the interpretation of a statute.

**12. Statutes § 5b: Taxation § 23½—**

Administrative interpretation of a statute can be considered in its construction only when ambiguity exists, and never can be considered when in direct conflict with the clear intent and purpose of the act.

**13. Taxation § 23½—**

Tax statutes are to be strictly construed against the State and in favor of the taxpayer.

APPEAL by both plaintiff and defendant from *Stevens, J.,* October Term, 1951, WILSON.

Civil action to recover excise taxes paid under protest.

Plaintiff purchased from the Wincharger Corporation of Iowa the necessary fabricated parts for the construction of four radio towers. Defendant assessed a use or excise tax against the total purchase price of such parts at the rate of three per cent. Plaintiff paid the tax so assessed in excess of $60, under protest.

Likewise plaintiff regularly receives, under rental contracts, tape recordings and records of speeches on political, religious, and other subjects and of dramatic, musical, and other programs for rebroadcasting by transcription. The defendant levied and assessed against the total rentals paid by plaintiff a use or excise tax at the rate of three per cent in the sum of $347.70. Plaintiff paid the assessment under protest.

Thereafter it instituted this action to recover back taxes so paid with interest.

When the cause came on for trial, the parties waived trial by jury, stipulated the facts and submitted the cause to the court for consideration and decision of the legal questions thereby raised. The stipulated facts may be summarized as follows:

1. The plaintiff is engaged in the radio broadcasting business, broadcasting both paid advertising and entertainment programs throughout eastern North Carolina and parts of Virginia and South Carolina.

2. In order to operate its said business, plaintiff, on 4 August 1947, purchased from the Wincharger Corporation of Iowa articles and items of tangible personal property costing $26,855.40, which when joined together, connected, assembled, and erected at plaintiff's location in Wilson, resulted in four radio towers, complete with earth anchors and mounting plates. Said articles and items, although constituting four allotments or four groups of articles or items—one group for each tower—were designed to form and did form four radio towers, and the purchase was made as four radio towers.

3. The articles so purchased were shipped in interstate commerce from Iowa to Wilson, N. C. They were many in number, and any one article or combination of parts, less than all for one tower, is practically worthless for the reason they were fabricated especially to form, when joined together, four radio towers, and none of said articles are adaptable to use for any other purpose.

4. The total cost to plaintiff of all said articles was $26,855.40, upon which amount defendant calculated, charged, and collected a tax of three per cent. Plaintiff paid said tax but protested the payment so made, except as to $60, on the contention that for tax purposes it had purchased only four articles, to wit: four radio towers.

5. That it is approved procedure for a broadcasting station to bring to its listeners various programs by transcription. These transcriptions are obtained through rental agreements. The plaintiff had adopted and was following this approved procedure. Under the contracts for transcriptions made by it, the tape recordings and records were shipped to plaintiff, used by it for rebroadcasting the recorded programs, and then returned to the owners. Under its rental contracts plaintiff was never vested with any property interest or right in the records or transcriptions used. It acquired only the right to play and use them in such manner as to broadcast the recorded program, speech, or discussion to its listening audience.

6. The total amount of rentals paid by plaintiff at the time defendant audited its books was $11,589.84. The defendant calculated, charged, and collected a tax of three per cent upon said sum in the amount of $347.70. Plaintiff paid said tax so assessed under protest.

It is admitted that plaintiff has complied with all prerequisite statutory requirements and has exhausted its administrative remedies and is entitled to maintain and prosecute this action.

The court below concluded, upon the facts agreed, that the articles purchased for the purpose of erecting four radio towers constituted, for sales or use tax purposes, only four articles, to wit: four radio towers; that plaintiff was and is liable to defendant for the use tax in the sum of $15 on each tower purchased, that is, in the total sum of $60 only; that the rentals of transcriptions for rebroadcasting "and their subsequent use, storage, or consumption in this State constituted taxable transactions" and plaintiff is liable for a use tax in the sum of three per cent of the total amount "paid for the license, use or rental thereof."

It thereupon entered judgment that: (1) plaintiff recover of defendant $953.84 with interest, excess taxes paid on the purchase of the four radio towers, and (2) plaintiff have and recover nothing on its claim for a refund of taxes paid upon the rental of the transcriptions for rebroadcasting.

Defendant excepted to the judgment on the first cause of action that plaintiff recover taxes collected on the parts purchased for the erection of radio towers and appealed. Plaintiff excepted to the judgment on his second cause of action that it recover nothing on account of taxes paid on the total rental price of transcriptions and appealed.

*Bunn & Bunn, Gardner, Connor & Lee, and John G. Dawson for plaintiff.*

*Attorney-General McMullan, Assistant Attorneys-General McGalliard and Lake for defendant.*

BARNHILL, J.   The plaintiff properly sets forth in its complaint two separate and distinct causes of action: (1) for the recovery of the alleged excess amount paid on the parts purchased for the construction of the four radio towers, and (2) for the recovery of the taxes paid on the rentals for transcriptions.   This serves to clarify and facilitate discussion of the questions of law raised by the appeals herein.

### FIRST CAUSE OF ACTION.

Are the fabricated articles or parts purchased by plaintiff for use in the erection of four radio towers building material within the meaning of G.S. 105-187?  If so, plaintiff was liable for the excise tax assessed and collected by defendant.

The subtitle of that section of our sales and use tax Act, General Statutes 105, Art. 5, is: "Tax on building materials."  The pertinent part thereof reads as follows:

"There is hereby levied and there shall be collected from every . . . corporation, an excise tax of three per cent of the purchase price of all tangible personal property purchased or used . . . which shall enter into or become a part of any building or any other kind of structure in this State, including all materials, supplies, fixtures, and equipment of every kind and description which shall be annexed thereto or in any manner become a part thereof . . ."  The tax collectible on any one article is limited to $15.

None of the parts purchased and upon which a tax was levied come within the exceptive provision contained in G.S. 105-187 and, so far as the record discloses, no single part cost in excess of $500.  Likewise, there is no suggestion that the plaintiff purchased four radio towers erected and standing in Iowa which were disassembled merely for the purpose of shipment.  While the parts were fabricated for use in the erection of radio towers, they were first actually assembled and joined together in the form of towers after they reached Wilson and were delivered to plaintiff by the carrier.  So then, if the fabricated parts constituted building material for use in building or erecting a "structure" as that term is used in G.S. 105-187, plaintiff was liable for the tax assessed and collected and was not entitled to recover any part thereof.

A "structure" is "something constructed or built."  Webster's New Int. Dic., 2nd Ed.; *Jefferson Davis County v. Riley,* 130 So. 283; *Brown v. City of Decatur,* 188 Ill. App. 151; that which is built or constructed; an edifice or a building of any kind; in the widest sense any product or piece of work artificially built up or composed of parts and joined together in some definite manner.  *Favro v. State,* 46 S.W. 932, 73 Am. St. Rep. 950; *Paye v. City of Grosse Pointe,* 271 N.W. 826.

"Building" and "structure" are synonymous. They agree in meaning but differ slightly in application. "Structure" retains more frequently than the other the sense of something constructed, often in a particular way. Webster's Dic. of Synonyms.

That a radio tower comes within the accepted definition of the term "structure" would seem to be beyond question. In applying G.S. 105-187, we must accord the ordinary words used therein their natural, approved, and recognized meaning. *Cab Co. v. City of Charlotte,* 234 N.C. 572. This being true, we are constrained to conclude that the fabricated parts purchased by plaintiff for the erection of radio towers constituted building material within the meaning of that statute. That the parts, singly or in combinations less than are required for the erection of a tower, were practically worthless is not material. The purchase price is the yardstick by which the tax due is to be measured.

The contention that the tax imposed constitutes a burden on interstate commerce is without merit. At the time the tax was assessable, the property had reached the end of its interstate transportation and had come to rest in this State. It then formed a part of the common mass of property within this State. It was purchased for use as building material and its purchase for such use within this State was taxable under the provisions of the statute. G.S. 105-187; *Johnston v. Gill, Comr. of Revenue,* 224 N.C. 638, 32 S.E. 2d 30; *Powell v. Maxwell, Comr. of Revenue,* 210 N.C. 211, 186 S.E. 326; *Henneford v. Silas Mason Co.,* 300 U.S. 577, 81 L. Ed. 814; *Monamotor Oil Co. v. Johnson,* 292 U.S. 86, 78 L. Ed. 1141; *McLeod v. Dilworth Co.,* 322 U.S. 327, 88 L. Ed. 1304. See also *Helson & Randolph v. Kentucky,* 279 U.S. 245, 73 L. Ed. 683.

It follows, therefore, that the court below erred in rendering judgment in favor of plaintiff on its first cause of action and the judgment in that respect must be reversed.

### SECOND CAUSE OF ACTION.

G.S. 105-220 reads in part as follows:

"An excise tax is hereby levied and imposed on the storage, use, or consumption in this State of tangible personal property purchased from a retailer within or without this State . . . for storage, use, or consumption in this State at the rate of three per cent of the sales price of such property regardless of whether said retailer is or is not engaged in business in this State.

". . .

"Every person storing, using, or otherwise consuming in this State tangible personal property purchased or received from a retailer . . . shall be liable for the tax imposed by this article . . ."

The statute, in G.S. 105-219, defines the material terms used in the foregoing section.

"(a) 'Storage' means and includes any keeping or retention of possession . . . for any purpose except sale in the regular course of business of tangible personal property purchased from a retailer."

"(b) 'Use' means and includes the exercise of any right or power of dominion whatsoever over tangible personal property by a purchaser thereof and includes . . . any . . . exhaustion or consumption of tangible personal property by the owner or purchaser thereof . . ."

"(c) The word 'sale' or 'selling' shall mean any transfer of title or possession, or both, exchange or barter of tangible personal property, conditional or otherwise . . . for a consideration paid or to be paid . . . and shall include any of said transactions whereby title or ownership is . . . to pass . . . and shall further mean and include any bailment, loan, lease, rental or license to use or consume tangible personal property for a consideration paid . . . in which possession of said property passes to the bailee, borrower, lessee, or licensee . . ."

"(d) 'Purchase' means the buying of, giving an order for . . . tangible personal property as a result of which there occurs a sale or delivery of tangible personal property by a retailer to a person for the purpose of storage, use, or consumption in this State . . ."

"(g) 'Retailer' means and includes every person engaged in the business of making sales of tangible personal property . . . for storage, use or consumption in this State, and every manufacturer, producer, or contractor engaged in business in this State selling . . . tangible personal property for use in this State . . ."

"(i) 'Tangible personal property' means personal property which may be seen, weighed, measured, felt, touched, or is in any other manner perceptible to the senses . . ."

To these definitions contained in the statute we may add that an "excise tax" is a tax levied upon the sale or consumption of personal property. Callaghan, Cyc. Law Dic., 2d Ed.; Webster's New Int. Dic., 2d Ed. A use tax is a tax on the enjoyment of that which was purchased. *McLeod v. Dilworth Co., supra.*

Thus it appears no excise tax is assessable under the terms of G.S. 105-220 unless there has been (1) a purchase of tangible personal property, (2) from a retailer (3) for storage, use or consumption within this State; and (4) title to or possession of such property passes from the "retailer" to the "purchaser." *Johnston v. Gill, Comr. of Revenue, supra.*

The mere statement of the essentials of a taxable transaction under this section would seem to make it apparent that the contracts between plaintiff and lessors of transcriptions for rebroadcasting do not come within the terms of the statute.

The lessors are not retailers. They are merely distributors of transcriptions for rebroadcasting. Nor is the plaintiff the purchaser of tangible personal property. It merely purchases the right to rebroadcast the program, speech, or discussion recorded on a transcription tape or record. In order that it may make use of its purchase, it is accorded temporary custody of the recordings necessary to that end. Neither title to nor possession of tangible personal property passes to it.

"Custody" and "possession" are not convertible terms. *Boatright v. State,* 51 S.W. 2d 311.

By possession is meant that by which one can exercise his power over property at his pleasure to the exclusion of all others. *Commission Co. v. London,* 13 S.W. 513, 7 L.R.A. 403. "Possession" means simply the owning or having a thing in one's possession and implies the present right to deal with property at pleasure and exclude others from meddling with it. *S. v. Danser,* 144 S.E. 295. Personal property is in the "possession" of a person when it is in his custody and control and subject to his disposition. *S. v. Jones,* 213 N.C. 640, 197 S.E. 152.

But defendant leans heavily upon that part of the definition of "sale" contained in G.S. 105-219 (c) which reads as follows: "and shall further mean and include any bailment, loan, lease, rental or license to use or consume tangible personal property for a consideration paid . . . in which possession of said property passes to the bailee, borrower, lessee, or licensee." This provision, however, may not be lifted out of its context so as to universalize its meaning. A word or phrase or clause or sentence may vary greatly in color and meaning according to the circumstances of its use. *Towne v. Eisner,* 245 U.S. 418, 62 L. Ed. 372. It is axiomatic, therefore, that a provision in a statute must be construed as a part of the composite whole and must be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit. Its meaning must sound a harmonious—not a discordant—note in the general tenor of the law.

The purpose of this extension of the ordinary meaning of the word "sale" is apparent. It is intended to plug a possible loophole in the statute by preventing a retailer from evading the provisions of the act by camouflaging a sale under the label of bailment, loan, lease, or like term when it is intended that in fact both the use and the possession shall pass to the bailee, borrower, lessee, or licensee. It is not sufficient to embrace the transactions here in question.

Our sales tax statute, G.S. Ch. 105, Art. 5, levies a tax upon the sale of tangible personal property in this State by a "retail" merchant as a privilege tax for engaging or continuing in the business of a retail merchant. The compensating use tax, G.S. Ch. 105, Art. 8, here under consideration, levies a tax upon the storage, use, or consumption within this

State of tangible personal property which has been purchased by a local resident from a retailer. Its purpose is to remove, in so far as possible, the discrimination against local merchants resulting from the imposition of a sales tax, and to equalize the burden of the tax on property sold locally and that purchased without the State. *Johnston v. Gill, Comr. of Revenue, supra.*

The intent runs throughout both statutes, which are merely separate divisions of the same revenue law, that the tax shall be assessed upon the basis of the consideration paid in transactions between retailers and consumers in which dominion over, possession of, or title to tangible personal property is acquired by the "purchaser." The only difference is that in the first the tax is upon the sale, and in the second it is upon the enjoyment of the thing purchased.

The legislative intent is the essence of the law and the guiding star in the interpretation thereof. 50 A.J. 200; *Mullen v. Louisburg,* 225 N.C. 53, 33 S.E. 2d 484; *Midkiff v. Granite Corp., ante,* p. 149, and cases cited.

"Few words are so plain that the context or the occasion is without capacity to enlarge or narrow their extension." Crawford, Stat. Constr. 276, sec. 174; *Mullen v. Louisburg, supra.* Such is the case here. The words "bailment," "loan," "lease," "rental," and "license," as used in the definition of "sale," must be so construed as to harmonize with the other provisions of the statute and conform to the clear intent of the Legislature.

While it is true one of the most significant aids to construction in determining the meaning of a revenue law is the interpretation given such act by the administrative agency charged with its enforcement, the rule has no application here. This for the reason the rule is invoked only when ambiguity exists. Under no circumstances will the courts follow an administrative interpretation in direct conflict with the clear intent and purpose of the act under consideration. Crawford, Stat. Constr. 397 (see cases cited in note); Sutherland, Stat. Constr., 3rd Ed. 310; *Gill v. Commissioners,* 160 N.C. 176, 76 S.E. 203; *Bottling Co. v. Shaw, Comr. of Revenue,* 232 N.C. 307, 59 S.E. 2d 819.

"It is only in cases of doubt or ambiguity that the courts may allow themselves to be guided or influenced by an executive construction of a statute. If the words of the law are clear and precise, and the true meaning evident on the face of the enactment, there is no room for construction." Black, Interpretation of Laws, 2nd Ed. 305, 50 A.J. 204. And this is true no matter how long the administrative construction has been followed. *Louisville & N. R. Co. v. U. S.,* 282 U.S. 740, 75 L. Ed. 672.

Tax statutes are to be strictly construed against the State and in favor of the taxpayer. *S. v. Campbell,* 223 N.C. 828, 28 S.E. 2d 499; *Sabine v. Gill, Comr. of Revenue,* 229 N.C. 599, 51 S.E. 2d 1; *Henderson v. Gill,*

*Comr. of Revenue,* 229 N.C. 313, 49 S.E. 2d 754; 3 Sutherland, Stat. Constr., 3d Ed., 293.

"In the interpretation of statutes levying taxes, it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen." *Gould v. Gould,* 245 U.S. 151, 62 L. Ed. 211.

The language used in G.S. 105-220 and related sections of our sales and use tax Act, when so construed, compels the conclusion that the court below erred in sustaining the tax levied against the total cost to plaintiff of the right to broadcast transcriptions furnished it under contract as set forth in its second cause of action.

We have examined the decisions cited by defendant to which we have made no specific reference. None of them are sufficiently pertinent to the question here presented to require discussion.

The judgment entered in the court below on each cause of action must be

    Reversed.