PIEDMONT CANTEEN SERVICE, INC. v. WILLIAM JOHNSON, COMMISSIONER OF REVENUE FOR NORTH CAROLINA.

(Filed 12 January, 1962.)

**1. Controversy Without Action § 2—**

Where more than one inference can be drawn from facts stipulated by the parties, the court has the authority to find the ultimate determinative facts from the evidentiary facts stipulated.

**2. Taxation § 29— Facts stipulated held to support finding that charge paid by lessee was rent subject to use tax and not a service charge.**

The stipulated facts disclosed that plaintiff leased automatic vending machines, some of which sold the products of lessor and some of which did not, that lessee paid a rental charge on all the machines and, in addition, paid a "supplemental rental" on those machines which did not sell the products of lessor, calculated on a percentage of the gross sales of the products sold by those machines. It appeared further that lessor serviced all the machines and performed certain bookkeeping and promotional services. *Held:* The evidentiary facts support the finding of the ultimate fact that the "supplemental rental" was payment for the use of the machines and therefore was subject to the North Carolina use tax, and was not a mere service charge or an operating profit accruing to the lessor. G.S. 105-164.6.

**3. Same—**

Construing the North Carolina sales tax statute as a whole, it *is held* to impose a privilege or license tax upon retailers and not a purchasers' or consumers' tax, and therefore a retailer is not exempt from liability for the tax on articles selling for less than ten cents even though he may not recoup the tax from the purchaser in such instances. G.S. 105-164.10.

**4. Statutes § 5—**

A part of a statute is not to be interpreted out of context but the entire statute must be construed as a whole and harmonized to ascertain the intent of the legislature, the legislative intent being the guiding star in the interpretation of statutes. G.S. 105-164.10.

**5. Same—**

Where the language of a statute expresses the legislature's intent in clear and unambiguous terms, the words must be taken as a final expression of the meaning intended unaffected by the legislative history of the statute.

**6. Taxation § 23—**

An interpretative regulation by the Commission of Revenue will ordinarily be upheld if made pursuant to statutory authority and if not in conflict with the terms and purpose of the act pursuant to which it was made.

**7. Taxation § 29—**

The incorporation into the sales tax statute of the bracket system for computing the amount of sales tax which should be collected from the customer in the purchase of articles costing less than a dollar made no material change in the statute, the regulation of the Commissioner of Revenue being already in effect prior to its incorporation into the statute.

**8. Taxation § 19—**

One who claims an exemption or exception from a tax has the burden of bringing himself within the exemption or exception.

**9. Taxation § 2—    Fact that general rule necessarily results in hardship in particular instances does not render it unconstitutional.**

G.S. 105-164.1, et seq., imposes a sales tax on all retailers as a class and applies alike in its exceptions and exemptions to all retailers, and therefore if incidents of trade lead to inequality or hardship in recoupment of the tax from customers because of the necessity of specifying the price ranges within which the retailer may require the purchaser to pay the one, two, and three cents, with no tax collected from the purchaser on sales of less than ten cents, such inequality is inherent in the application of any general rule and does not render the tax unconstitutional as violating the due process clause of the State Constitution or the 14th Amendment of the Federal Constitution.

**10. Constitutional Law § 4;    Taxation § 36—**

Only those whose personal, property, or constitutional rights are injuriously affected or threatened by a statute may challenge its constitutionality, and where a retailer does not make it appear that he had suffered any monetary damage by the method used in determining his right to recoup the tax from his customers, he is not in a position to challenge the constitutionality of the statute on the ground that the method of recoupment resulted in unjust discrimination between retailers.

APPEAL by plaintiff from *Bickett, J.,* June 5, 1961 Civil Term of WAKE.

Plaintiff, Piedmont Canteen Service, Inc. (hereinafter called "Piedmont") is a North Carolina corporation, having its principal office in Greensboro, North Carolina. It sells at retail within this State cigarettes, bakery products, candy, bottled drinks and coffee through coin

operated automatic vending machines. It leases the machines from Automatic Canteen Company of America (hereinafter called "Automatic"), of Chicago, Illinois.

Auditors of the North Carolina Department of Revenue examined Piedmont's records for the period 10 June 1956 to 11 April 1959 and on 15 May 1959 proposed an assessment of additional sales and use taxes. On 26 June 1959 Piedmont protested the proposed assessment and was granted a hearing before the Commissioner of Revenue on 29 September 1959. The Commissioner sustained the assessments, authorized waiver of penalty, and notified Piedmont on 25 July 1960. Piedmont gave notice of intention to petition the Tax Review Board for administrative review in accordance with G.S. 105-241.2.

Piedmont abandoned its application for administrative review and on 22 August 1960 paid under protest the sales and use tax assessments claimed by the Commissioner, and demanded refund. In apt time Piedmont instituted this action, pursuant to G.S. 105-267, to recover the following amounts which had been included in the payment: $11,992.99 sales tax and $1,969.25 interest, and $967.82 use tax and $158.91 interest — total $15,088.97.

The cause was heard by the judge upon a "stipulation" (agreed statement of facts). The court entered judgment denying the relief prayed for in the complaint.

Plaintiff appeals.

*Henderson & Henderson, Lloyd F. Baucom, and Robert D. Stewart for plaintiff appellant.*

*Attorney General Bruton and Assistant Attorneys General Pullen and Abbott for defendant appellee.*

MOORE, J.  We first consider the use tax assessment.

By the terms of the lease agreement for use of the vending machines Piedmont was obligated to pay, and did pay, Automatic rental on three bases: (1) Initial rent, to cover Automatic's cost of placing machines in Piedmont's place of business; (2) period rent, for 65 company periods or five years to cover amortization of the cost of machines to Automatic; and (3) residual rent, a nominal rental charged by Automatic for use of machines more than five years old. These three rentals were paid with respect to all of the machines leased by Piedmont.

In addition, Piedmont paid to Automatic a separate fee designated in the lease contract as "supplemental rent." "Supplemental rent" applied only to machines through which bottle drinks and coffee were sold. The bakery products, candy and like items, which were sold through the other machines, were packaged and supplied to Piedmont

by Automatic, and with respect to these items Automatic made a profit from wholesaler's markup, and no "supplemental rent" was charged for the use of the machines vending these items. A part of the products sold through the drink and coffee machines was purchased by Piedmont locally, and as to these Automatic realized no Wholesaler's profit. Since Automatic received no wholesaler's profit from the products sold through the drink and coffee machines, the "supplemental rent" was paid for the use of such machines to compensate for the absence of profit. The "supplemental rent" was a percentage of the gross sales of products sold through the drink and coffee machines.

The lease agreement was not available at the trial. Piedmont's manager explained its terms, as above outlined, and his testimony was included in the stipulation. His testimony also contained the following facts and explanations: Supplemental rent "was not designed as a fee or charge for the use of the equipment but was, instead, a payment required by Automatic as part compensation for engineering services, public relation services and other benefits rendered by Automatic to plaintiff. . . . (S)upplemental rental was not . . . charged by Automatic upon any gross sales made through vending machines vending a product such as candy, bakery products and the like which had been purchased by plaintiff from Automatic and on which Automatic had made a profit. . . . 'Supplemental rental' was applicable to and payable only with respect to leased drink and coffee machines through which products were dispensed, part of which were not purchased at wholesale from Automatic. . . . Piedmont . . . could not have used such leased drink and coffee machine . . . without payment of the 'supplemental rental.' The payments were made by plaintiff to Automatic . . . for the right to use its vending machines and its franchise in North Carolina. Automatic . . . furnished bookkeeping service, repair service and promotional help to Piedmont . . . in connection with the use of all of its vending machines located in North Carolina. Such service was furnished for machines on which no 'supplemental rental' was paid as well as on machines on which 'supplemental rental' was paid. If Piedmont failed to pay any of the fees designated in the contract as rental, Automatic . . . could have deprived Piedmont of the use of the machines on which fees required by the contract had not been paid and could have also deprived Piedmont of its franchise. . . . Piedmont could not have used bakery goods, cigarette and candy machines under the franchise agreement if plaintiff had not purchased such items directly from Automatic . . . or in such fashion as to enable Automatic . . . to make a profit comparable to wholesaler's profit or 'product override.' "

For the audit period Piedmont paid Automatic $32,260.22, "supple-

mental rental" on drink and coffee machines. The Commissioner of Revenue contends that this payment was "rent" for the use of vending machines in this State and that use tax on this amount, at the rate of 3%, was due and payable. G.S. 105-164.6. On the other hand, plaintiff contends that the payment was a service charge or an "operating profit accruing to the franchising company where an override or surcharge upon products sold was, for one reason or another, uncollected," and was not, in fact, "rent" for use of machines.

The trial court found as a fact that the "supplemental rental" was based on the amount of the gross sales made through the drink and coffee machines and was not related to services rendered in connection with such machines, that Automatic rendered the same services to all its machines (whether subject to supplemental rental or not), and that Piedmont paid the supplemental rental for the right to use the drink and coffee machines in North Carolina. The court concluded that the 3% use tax on the supplemental rental paid by plaintiff was "lawfully assessed and collected" by the Commissioner of Revenue.

Where jury trial has been waived and evidentiary facts stipulated, if more than one inference can be drawn from these facts, it is permissible for the court to find the ultimate determinative facts from the evidence stipulated. *Credit Association v. Whedbee*, 251 N.C. 24, 29, 110 S.E. 2d 795. Where different inferences can be drawn from the evidence the ultimate issue is for the trial judge when jury trial is waived. *Turnage Co. v. Morton*, 240 N.C. 94, 99, 81 S.E. 2d 135.

In the findings and judgment of the court with respect to the use tax assessed and collected we find no error. The evidentiary facts stipulated permit, if not compel, the inference that the "supplemental rental" was payment for the use of the machines and the exercise of the franchise therefor in North Carolina. Moreover, the contracting parties designated it as "rental" in their lease agreement. *Trust Co. v. Processing Co.*, 242 N.C. 370, 88 S.E. 2d 233.

We now consider the challenged sales tax assessment.

The total amount of Piedmont's retail sales through vending machines for the audit period was $1,758,491.83. Of this amount $399,-766.43 was realized from sales of items priced at less than ten cents per unit. It is plaintiff's contention that it is not liable for payment of 3% sales tax on the $399,766.43 received by it from sales of items priced at less than ten cents each. The Commissioner of Revenue contends to the contrary.

G.S. 105-164.10 provides in part that "every retailer . . . shall add to the sale price and collect from the purchaser on all taxable retail sales an amount equal to the following: (1) No amount on sales of less than 10c; (2) 1c on sales of 10c and over but not in excess of

35c; (3) 2c on sales of 36c and over but not in excess of 70c; (4) . . ."
(semi-colons added.)

Plaintiff's argument rests upon the premise that the North Carolina
sales tax is, as a matter of law and by intent of the legislature, a pur-
chasers' or consumers' tax. It insists that, since the tax is a purchasers'
tax and the retailer cannot charge and collect the tax on sales of less
than ten cents, the sales of items through vendings machines priced at
less than ten cents each are nontaxable, and that its receipts of $399,-
766.43 from the sale of such items are exempt from assessment for
sales tax.

We do not agree that the North Carolina sales tax is a purchasers'
or consumers' tax in the sense contended by plaintiff. It is true that
the act makes provision for retailers to pass the tax on to and collect
it from the purchasers, but the tax is primarily and essentially a
privilege or license tax imposed on retailers. A part of a statute may
not be interpreted out of context so as to render it inharmonious to the
intent of the act, but must be construed as a part of the whole. *Watson
Industries v. Shaw,* 235 N.C. 203, 69 S.E. 2d 505; *State v. Barksdale,*
181 N.C. 621, 107 S.E. 505; *White v. State,* 306 P. 2d 230 (Wash. 1957).

Sales tax provisions are contained in Article 5, Chapter 105 of the
General Statutes of North Carolina. Division I states the title and pur-
pose of the act. "This article shall be known as the 'North Carolina
Sales and Use Tax Act.'" G.S. 105-164.1. "Purpose:— The taxes here-
in imposed shall be in addition to all other license, privilege or excise
taxes. . . ." G.S. 105-164.2. Division II, part 1, imposes and levies the
retail sales tax. "Imposition of tax; retailer. — There is hereby levied
and imposed . . . a privilege or license tax upon every person who en-
gages in the business of selling tangible personal property at retail
. . . in this State, the same to be collected and the amount to be de-
termined by the application of the following rates against gross sales
. . . , to wit: (1) at the rate of three per cent (3%) of the sales price
of each item or article of tangible personal property when sold at
retail in this State, the tax to be computed on total net taxable sales
for the purpose of remitting the amount of the tax due the State and
to include each and every taxable retail sale or amount of taxes col-
lected whichever be the greater." G.S. 105-164.4. "The said tax shall
be collected from the retailer . . . and paid by him at the time and in
the manner as hereinafter provided." G.S. 105-164.4(4). "Any person
who shall engage or continue in any business for which a privilege tax
is imposed by this article shall . . . apply for and obtain from the
Commissioner upon payment of the sum of one dollar ($1.00) a license
to engage in and conduct such business upon condition that such person

shall pay the tax accruing to the State . . . under the provisions of this article. . . ." G.S. 105-164.4 (6).

From the foregoing provisions, explaining the purpose and imposing the tax, it is clear that the Legislature intended that the sales tax be primarily a privilege or license tax on retailers. The legislative intent is the guiding star in the interpretation of statutes. *Watson Industries v. Shaw, supra; Mullen v. Louisburg,* 225 N.C. 53, 33 S.E. 2d 484. Plaintiff cites certain language in the Report of the Tax Study Commission (1956) as indicative of the intention of the Legislature to levy a sales tax against consumers. This report was available to the General Assembly when the act was rewritten in 1957. But where the language of a statute expresses the legislative intent in clear and unambiguous terms, the words employed must be taken as the final expression of the meaning intended unaffected by its legislative history. *Hedrick v. Graham,* 245 N.C. 249, 260, 96 S.E. 2d 129; *Raleigh v. Bank,* 223 N.C. 286, 26 S.E. 2d 573.

Plaintiff maintains that this Court has interpreted the act as a levy of tax upon consumers, and quotes from *Assurance Co. v. Gold,* 249 N.C. 461, 106 S.E. 2d 875, and *Henderson v. Gill,* 229 N.C. 313, 49 S.E. 2d 754. The former involves a tax on insurance premiums and the Court points out a similarity to sales tax in language which is pure *dictum.* The latter relates to sales tax liability on flowers grown by a retail florist, and the language relied on relates to an administrative provision and the nature and purpose of the law is not directly involved. But in *Watson Industries v. Shaw, supra,* construing the act, this Court declared that "Our sales tax statute, G.S. 105, Art. 5, levies a tax upon the sale of tangible personal property in this State by a 'retail' merchant as a privilege tax for engaging or continuing in the business of a retail merchant." See also *Robinson & Hale, Inc. v. Shaw,* 242 N.C. 486, 87 S.E. 2d 909.

Plaintiff places its reliance upon some of the language in G.S. 105-164.10, quoted above, which provides a bracket system for collecting the tax from consumers. It will be observed that G.S. 105-164.10 is included in Part 4 of Division II of Article 5, which contains certain administrative provisions enabling the retailer by authority of law to pass the tax on to purchasers. It does not relieve the retailer of any tax liability; it provides him a ready legal means for recoupment. The tax must be added to the purchase price and constitutes a debt from purchaser to retailer until paid, but failure to charge or collect the tax from purchaser shall not affect retailer's liability. G.S. 105-164.7. Any retailer who advertises that he will absorb the tax shall be guilty of a misdemeanor. G.S. 105-164.9. G.S. 105-164.10, upon which plaintiff relies and which provides a "Retail Bracket System"

and states that no amount of tax shall be collected on sales of less than ten cents, states that the bracket system is "for the convenience of the retailer in collecting the tax and to facilitate the administration of this article." It further states that the "use of the . . . bracket does not relieve the retailer from the duty and liability to remit to the Commissioner an amount equal to three per cent (3%) of the gross receipts derived from all taxable retail sales during the taxable period." Thus, it is seen that the Legislature was careful to state, in all instances where administrative provisions might be construed to shift the burden of the tax from retailer to purchaser, that such provisions do not relieve the retailer from his privilege tax liability. Furthermore, it is made clear that the bracket system is for the convenience of the retailer.

Plaintiff seems to concede that the act constituted a privilege tax prior to the effective date of Ch. 1340, S.L. 1957, which rewrote the sales tax law. But it asserts that the law, by virtue of the 1957 enactment, made it a consumers' tax from and after July 1, 1957, for the reason that the bracket system was written into the act and thereby became compulsory. It is true that the bracket system was not a part of the act itself prior to July 1, 1957. Nevertheless, the 1957 act did not materially change the administration of the law in this respect. The Commissioner had theretofore promulgated a bracket system and its observance by retailers was not optional, as contended by plaintiff, but was compulsory. G.S. 105-186 (Chap. 262, P.L. 1939) empowered and directed the Commissioner of Revenue "to devise, promulgate and enforce regulations under which retail merchants shall collect from the consumers, by rule uniform as to classes of business, the sales tax levied upon their business . . . ," which regulations "may include plans which require both more and less than the prescribed rate of the tax on the sale price. . . ." It further provided that such regulations should "become effective after reasonable notice to the retail merchants and when so promulgated they shall have the full force and effect of law" and that "any merchant who violates such rules and regulations shall be guilty of a misdemeanor." An interpretative regulation made by the Commissioner of Revenue will ordinarily be upheld if made pursuant to statutory authority and if not in conflict with the terms and purpose of the act pursuant to which it was made. Campbell v. Currie, 251 N.C. 329, 111 S.E. 2d 319. The bracket system promulgated by the Commissioner and in force prior to July 1, 1957, was as effective and enforceable as if enacted directly by the Legislature. It contained a provision that no tax be collected by the retailer on sales of less than ten cents. Thus the 1957 act made no material change in the effect of the bracket system, and made no

change in the nature of the tax by reason of the inclusion of the bracket system in the act itself.

Plaintiff refers to the various provisions of the act imposing tax liability upon retailers and adverts to the language which, in each instance, levies the tax upon "total net *taxable* sales." It contends that the items priced at less than ten cents per unit and sold through the vending machines are *nontaxable* under the bracket system and are therefore exempt. One who claims an exemption or exception from tax coverage has the burden of bringing himself within the exemption or exception. *Sabine v. Gill,* 229 N.C. 599, 51 S.E. 2d 1; *Henderson v. Gill, supra; Motor Co. v. Maxwell,* 210 N.C. 725, 188 S.E. 389; *Smoky Mountain Canteen Co. v. Kizer,* 247 S.W. 2d 69 (Tenn. 1952). The act itself provides that "to prevent evasion of the retail sales tax, it shall be presumed that all gross receipts of . . . retailers are subject to the retail sales tax until the contrary is established by the proper records. . . ." G.S. 105-164.26. During the audit period and prior to the 1961 amendment sales of many types of merchandise, such as essential foods and medicines, were exempt. G.S. 105-164.13. Plaintiff claims no exemption under this section and makes no contention that any of the types of merchandise sold by it are exempt or nontaxable because of the nature of the merchandise. Its sole contention is that the items priced at less than ten cents each and sold through vending machines are nontaxable because of the low unit price. This contention is not sustained. The expression "total net taxable sales" and expressions of similar purport, as used in the act, mean the total of all retail sales, except those excluded in whole or in part by Part 1 of Division II which imposes and levies the tax, and except those which are exempt under G.S. 105-164.13. The sales which plaintiff claims are nontaxable are not so excluded or exempted. While not necessary to a decision in this case, it is of interest to observe that the act in no particular exempts goods from the tax on retailers because of smallness of unit price. Moreover, the bracket system (G.S. 105-164.10) provides that a retailer shall collect from a purchaser "no amount on *sales* of less than 10c." It has reference to *sales,* not *unit price* of goods. Plaintiff does not, and in all probability cannot, show what portion of its *sales,* if any, were less than ten cents. It is not to be assumed that all customers who purchased merchandise through vending machines, containing items priced at less than ten cents per unit, purchased only one unit each. Such assumption would be contrary to common knowledge and experience. If a customer buys two or more items priced at less than ten cents each so that the sale amounts to ten cents or more, "the retailer's failure to . . . collect said tax from the purchaser shall not affect" the retailer's liability to the State. The retailer is not

to be excused from liability merely because it is to his advantage to make use of a method of selling which will not permit him to keep a proper record of sales or to make the collections required by law.

Finally, plaintiff contends that the act as written and administered discriminates against retailers who sell merchandise through vending machines, especially if their machines sell items priced at less than ten cents each, and that the act, as to such retailers, therefore violates the due process clause of the Constitution of North Carolina and the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.

Plaintiff relies mainly upon the decision in *Winslow-Spacarb, Inc. v. Evatt*, 59 N.E. 2d 924 (Ohio 1945), a case involving sales of drinks, priced at five cents each, through vending machines. The Ohio law imposed a 3% sales tax and provided that no tax could be collected "if the *price* is less than nine cents." (Emphasis ours.) The court held that the Ohio tax was a consumers' tax and stated: "If Section 5546-12a were to be applied to such a vendor who collects no tax from the consumer, the vendor would be paying three per cent on his gross retail sales entirely out of his own pocket, while other vendors in the same vicinity selling similar and other commodities, some of their sales being taxable and others not, would have the privilege and advantage of deducting 'the amount of tax paid to the state by means of cancelling prepaid tax receipts,' for which expenditure they have been reimbursed by the consumer, thus placing them in a more favored position and in some instances, at least, causing them to pay little or nothing. The result would be an unfair discrimination among vendors, in violation of the equal protection clauses . . . of the Constitution of Ohio and the 14th Amendment to the Constitution of the United States."

In jurisdictions where the sales tax is imposed as a privilege tax on retailers the court, in situations somewhat similar to that in the instant case, have consistently held that the tax does not violate constitutional provisions relating to due process and equal protection. *F. W. Woolworth & Co. v. Gray*, 46 N.W. 2d 295 (N.D. 1951); *State v. Woods*, 5 S. 2d 732 (Ala. 1942); *White v. State*, 306 P. 2d 230 (Wash. 1957); *Smoky Mountain Canteen Co. v. Kizer, supra; W. F. Jensen Candy Co. v. State Tax Commission*, 61 P. 2d 629, 107 A.L.R. 261 (Utah 1936); *Roth Drugs v. Johnson*, 57 P. 2d 1022 (Cal. 1936).

North Carolina pioneered in the sales tax field and its sales tax law differs in some respects from the laws of the other States which have been in litigation respecting their validity. For this reason none of the cases listed above are exactly on all fours with the case at bar. But with respect to constitutionality *White v. State, supra,* is quite

similar. The State of Washington imposes a 3% tax on retail sales. The Tax Commission promulgated a bracket system for collection of the tax from purchasers. The bracket provided for no tax on sales of less than fourteen cents. Plaintiffs were engaged in sales through vending machines of merchandise priced at less than fourteen cents per unit, and collected no tax on its sales. Pursuant to statute the State required plaintiffs to pay 3% of its gross sales as tax. In discussing the validity and contitutionality of the sales tax law, as applied to plaintiffs, the court said:

> "The appellants point out that the system adopted sometimes results in inequities, as in their case; and consequently, they say, they are denied the equal protection of the laws and are deprived of their property without due process. This would be true if the statute and regulations were discriminatory, or if they provided an arbitrary and unreasonable classification. *Power Mfg. Co. v. Saunders*, 274 U.S. 490, 47 S. Ct. 678, 71 L. Ed. 1165; *Quaker City Cab Co. v. Commonwealth of Pennsylvania*, 277 U.S. 389, 48 S. Ct. 553, 72 L. Ed. 927. But the law makes no attempt to discriminate among sellers, nor does it classify them. It is true that it classifies sales for the purpose of applying the rate, but the rate remains constant throughout the schedule, and the schedule applies alike to every seller. In its general application, it imposes no hardship. It is only when a seller chooses to sell only items which are priced at a point on the schedule where less than the full tax is to be collected that he is forced to absorb part or all of the tax, and this is the exception rather than the rule."
>
> "We conclude that the statute in question requires the seller to pay the tax imposed when he fails for any reason to collect it; that the use of the bracket system authorized by the statute and adopted by the commission is reasonable and is designed to accomplish the purposes of the tax law as effectively as possible; that the law is neither arbitrary nor discriminatory and violates no constitutional right of the appellants."

The North Carolina law imposes the sales tax on all retailers, as a class, and applies it alike in its exactions and exemptions to all persons belonging to the prescribed class. Perfect equality in the collection of the tax by retailers from consumers is, as a practical matter, impossible as between almost any two or more retailers by reason of the differences in types of merchandise sold and selling methods. Dealing with a somewhat similar question, *Cardoza, J.*, stated: "We have never yet held that government in levying a graduated tax upon all the members of a class must satisfy itself by inquiry that every group

within the class will be able to pay the tax without the sacrifice of profits. The operation of a general rule will seld'om be the same for every one. If the accidents of trade lead to inequality or hardship, the consequences must be accepted as inherent in government by law instead of government by edict." *Fox v. Standard Oil Co.*, 294 U.S. 87, 102.

On this record plaintiff is in no position to challenge the constitutionality of the sales tax law. Only those persons may call into question the validity of a statute who have been injuriously affected thereby in their persons, property or constitutional rights. *Leonard v. Maxwell*, 216 N.C. 89, 98, 3 S.E. 2d 316; *St. George v. Hardie*, 147 N.C. 88, 98, 60 S.E. 920. Approximately 76% of plaintiff's receipts from sales of merchandise during the audit period was from sales of items priced at ten cents and above. The record does not disclose how much tax it actually collected during the audit period. It is common knowledge that merchandise sold through vending machines, such as cigarettes, drinks, bakery products and candy, is priced at twenty-five cents or less per item. If, for instance, its average sale (of items priced at ten cents and above) has been twenty cents, and if the tax has been collected as the law requires, plaintiff has collected 5% on more than three-fourths of its total receipts. In such case it has collected more than 3% of its total sales (including sales of items priced at less than ten cents each). Plaintiff makes no showing on this record that it has suffered any financial loss by reason of the sales tax as administered.

The judgment below is

Affirmed.