The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Joel Rex MOYER and John Brunz, Defendants-Appellees.

No. 80SA485.

Supreme Court of Colorado, En Banc.

Oct. 26, 1981.

Doyle T. Johns, Jr., Dist. Atty., Joseph J. Weatherby, Chief, Trial Deputy Dist. Atty., Fort Morgan, for plaintiff-appellant.

J. Gregory Walta, Colorado State Public Defender, Deborah S. Waldbaum, Deputy State Public Defender, Denver, for defendant-appellee Brunz.

Jack A. Murphy, Fort Morgan, for defendant-appellee Moyer.

QUINN, Justice.

The People appeal an order dismissing the charge of second degree burglary after a preliminary hearing. We reverse and remand.

By direct information the defendants, Joel Rex Moyer and John Brunz, were charged with second degree burglary on August 14, 1980, in Morgan County, Colorado. The information alleged that they "did unlawfully, feloniously and knowingly break an entrance into [or] enter [or] remain unlawfully in the building [or] occupied structure of City of Fort Morgan Dog Pound located at Fort Morgan with the intent to commit therein the crime of theft."

The situs of the alleged burglary was an outdoor area adjacent to the rear of a concrete building serving as the Fort Morgan Dog Pound. An office and interior kennels were located inside the building. The outdoor area was enclosed by a chain link fence nine feet in height. Chicken wire was affixed to the top of the chain link fence and it extended over a large part of the enclosed area. Within the enclosure there were seven separate compartments for the confinement of dogs. Pieces of plywood had been placed on top of the chicken wire directly over the individual compartments. Access to the interior of the enclosure could be gained through two gates in the fence, both of which were locked on the night in question, or through a door in the building adjoining the enclosure or by climbing over the fence.

At approximately 9:15 p. m. on the evening of August 14, Officer Bruce Ringo of the Fort Morgan Police Department noticed that the inside of the concrete building was illuminated and, upon further investigation, he saw a truck with a flatbed parked against the fence. He turned a spotlight on and observed several dogs running outside the fenced area. The defendant Brunz was standing next to the truck and defendant Moyer was standing on top of the wire which covered the enclosure. The officer arrested both defendants and rounded up

three dogs, two German shepherds and an Irish setter. Moyer later told the officer that he decided to take the Irish setter and let the other dogs loose.

The district court ruled that the fenced enclosure did not constitute a "building" or "occupied structure" and, therefore, there was not probable cause to believe the defendants committed the crime of second degree burglary as charged. Upon the entry of an order of dismissal, the People filed an appeal with this court pursuant to section 16–12–102, C.R.S. 1973 (1978 Repl. Vol. 8).

Section 18–4–203(1), C.R.S. 1973 (1978 Repl. Vol. 8), defines the crime of second degree burglary as follows:

"A person commits second degree burglary, if he knowingly breaks an entrance into, or enters, or remains unlawfully in a *building* or *occupied structure* with intent to commit therein a crime against a person or property." (Emphasis added.)

Section 18–4–101, C.R.S. 1973 (1978 Repl. Vol. 8), states that:

"As used in this article, unless the context otherwise requires:

"(1) 'Building' means a structure which has the capacity to contain, and is designed for the shelter of, man, animals, or property, and includes a ship, trailer, sleeping car, airplane, or other vehicle or place adapted for overnight accommodations of persons or animals, or for carrying on of business therein, whether or not a person or animal is actually present.

"(2) 'Occupied structure' means any area, place, facility, or enclosure which, for particular purposes, may be used by persons or animals upon occasion, whether or not included within the definition of 'building' in subsection (1) of this section, and which is in fact occupied by a person or animal, and known by the defendant to be thus occupied at the time he acts in violation of one or more of sections 18–4–102 to 18–4–105."

The words "[a]s used in this article" in section 18–4–101 refer to Article 4 of the Colorado Criminal Code, which is entitled "Offenses Against Property." Included within Article 4 are the statutory definitions of four degrees of arson, sections 18–4–102 to 105, C.R.S. 1973 (1978 Repl. Vol. 8), three degrees of burglary, sections 18–4–202 to 204, C.R.S. 1973 (1978 Repl. Vol. 8), and three degrees of criminal trespass, sections 18–4–502 to 504, C.R.S. 1973 (1978 Repl. Vol. 8).

The statutory definition of second degree burglary in section 18–4–203(1) employs the identical terms defined in section 18–4–101, namely, "a building" or "occupied structure." Neither the statutory definition of second degree burglary nor any other provision of Article 4 reveals a legislative intent to attribute to "building" or "occupied structure" a contextual meaning separate and apart from the definitions of these terms in section 18–4–101. On the contrary, the inclusion of "building" and "occupied structure" in the statutory definition of second degree burglary, without further qualification or restriction, clearly denotes an intent to ascribe to these terms the identical meaning expressly set forth in section 18–4–101. The question here, therefore, is whether the evidence at the preliminary hearing established that the fenced enclosure was either a "building" or "occupied structure" at the time of the alleged burglary.

■ Common to the terms "building" and "occupied structure" is the notion of structure. A structure in its broadest sense is something constructed or built and generally refers to "any product or piece of work artificially built up or composed of parts and joined together in some definite manner." *Watson Industries, Inc. v. Shaw*, 235 N.C. 203, 207, 69 S.E.2d 505, 509 (1952). It is not necessary that a structure have walls and a roof. *See, e. g., Sanchez v. People*, 142 Colo. 58, 349 P.2d 561 (1960); *El Jebel Shrine Ass'n. v. McGlone*, 93 Colo. 334, 26 P.2d 108 (1933); *see also* Annot., *What is a "building" or "house" within burglary statutes*, 78 A.L.R.2d 778 (1961).

■ In order to satisfy the statutory definition of a "building" in section 18–4–101(1), it was necessary for the evidence at

the preliminary hearing to establish the following: (1) the fenced enclosure was a structure, (2) it had a capacity for the containment of persons, animals or property, and (3) it was designed for the shelter of persons, animals or property. The fenced enclosure, which was substantial in its dimension and was built on open land in a manner comprising a unitary whole, constituted a structure within the broad meaning of that term. Also, the enclosure was capable of containing animals and, as the evidence disclosed, did indeed contain several dogs which were released by the defendants. However, a fenced enclosure generally is not designed for shelter; rather, its design is directed to containment or exclusion. Thus, the question here becomes whether the placement of chicken wire and pieces of plywood over parts of the enclosure transformed it into a structure designed for shelter. Clearly, the chicken wire afforded no effective protection against inclement weather and extreme temperatures. Any sheltering effect achieved by the placement of plywood over the individual compartments for the dogs was miniscule at most. With or without the plywood the animals confined within the fenced area remained substantially exposed to the natural elements and the vicissitudes of a basically unsheltered environment. The district court, therefore, correctly ruled that the evidence failed to establish the fenced enclosure was a "building."

We proceed to consider whether the fenced enclosure constituted an "occupied structure" as defined in section 18–4–101(2). As this section makes obvious, the legislature intended to include within the statutory definition of the term "occupied structure" certain types of enclosures "whether or not [these enclosures are] included within the definition of 'building' in subsection (1) of . . . section [18–4–101]." To satisfy the statutory definition of "occupied structure" in this case, it was necessary for the preliminary hearing evidence to establish that: (1) the enclosure was usable upon occasion by persons or animals for particular purposes; (2) it was in fact occupied by a person or animal; and (3) the defendants knew the enclosure was so occupied at the time of the alleged offense.

The evidence at the preliminary hearing demonstrates that the fenced enclosure had all the components of an "occupied structure" as defined in section 18–4–101(2). It was used by the City of Fort Morgan as an outdoor kennel, it was occupied by the dogs for that purpose, and the defendants knew it was so occupied at the time of the unlawful entry. In point of fact, the district court in its dismissal order characterized the enclosure as "a fenced kennel area." That such an enclosure is encompassed within the definition of "occupied structure" in section 18–4–101(2) is apparent from the plain meaning of the words used in the statutory definition of that term.

Since the preliminary hearing evidence establishes that the fenced enclosure had the essential attributes of an "occupied structure," the court erred in dismissing the charge of second degree burglary. Accordingly, the judgment is reversed and the cause is remanded for further proceedings as authorized by law.