STATE OF NORTH CAROLINA v. JAMES W. GAMBLE AND DWIGHT P. TAYLOR

No. 8112SC811

(Filed 16 February 1982)

**Indictment and Warrant § 9.8; Burglary and Unlawful Breakings § 1 — larceny — "building" not "fenced-in area" — granting motions to quash indictments**

Where two defendants were indicted separately for feloniously breaking or entering a building occupied by a corporation, and in answer to defendants' motions for a bill of particulars, the State informed defendants that the "building" was "the fenced-in area" of the company's warehouse, the trial court did not err in granting the motions to quash and dismiss the indictments as a "fenced-in area" is not a "building" within the meaning of G.S. 14-54.

Judge HEDRICK dissenting.

APPEAL by the State from *Brannon, Judge.* Order entered 19 May 1981 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 12 January 1982.

Defendants were indicted separately as follows: "[Defendant] unlawfully and wilfully did feloniously break or enter a building occupied by Carolina Power & Light Company, a corporation, used as a place of business, located at 3505 Camden Road, Fayetteville, North Carolina, with the intent to commit a felony therein, to wit: larceny, in violation of North Carolina General Statutes Section 14-54."

In answer to defendants' motions for a bill of particulars, the State informed defendants that the "building" they are alleged to have entered is "the fenced-in area of the Carolina Power and Light Company Line Warehouse." Defendants thereafter filed motions "to quash and/or dismiss" the indictments on the ground that "the fenced-in area" is not a "building" within the meaning of G.S. 14-54, "and as such breaking or entering a fenced-in area is not a criminal offense" under that statute.

Following extensive findings of fact and conclusions of law, the trial judge allowed the motions to quash and dismiss the indictments on the ground stated above. The State appeals from this order.

*Attorney General Edmisten, by Assistant Attorney General W. Dale Talbert, for the State.*

*Assistant Public Defenders William L. Livesay and Orlando F. Hudson, Jr. for defendant-appellees.*

HILL, Judge.

The parties stipulated, and the trial judge found, the following facts concerning "the fenced-in area" in which defendants are alleged to have broken or entered:

> [The area] is located at 3505 Camden Road in Fayetteville and is partially surrounded by a wire fence 5'10" to 6' tall. This fence runs along the north and eastern sides of the area in question and extends partly along the western and southern sides. In the southwestern corner of the area there is a metal building. The fence comes to within one or two inches

of the northwestern and southwestern corners of this building, which defines the remainder of the western and southern sides of the area in question. Within this area are spaces for parking cars and trucks, stacks of wooden utility poles, what appear to be transformers and other items of electrical and industrial equipment. Camden Road, a paved road in Fayetteville, runs along the western border some distances from the area in question. The only sign upon the fence or building is the number "3505".

This is a case of first impression in this State. The sole question for our review is whether a "fenced-in area" is a "building" within the meaning of G.S. 14-54, "[b]reaking or entering buildings generally."

G.S. 14-54 reads as follows:

(a) Any person who breaks or enters any *building* with intent to commit any felony or larceny therein shall be punished as a Class H felon.

(b) Any person who, wrongfully breaks or enters any *building* is guilty of a misdemeanor and is punishable under G.S. 14-3(a).

(c) As used in this section, *"building"* shall be construed to include any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, *and any other structure designed to house or secure within it any activity or property.*

(Emphasis added.) Thus, we must decide if a "fenced-in area" is "any other structure designed to house or secure within it any activity or property." *Id.*

Criminal statutes must be strictly construed. *In re Banks,* 295 N.C. 236, 244 S.E. 2d 386 (1978); *State v. Ross,* 272 N.C. 67, 157 S.E. 2d 712 (1967).

[W]hen a statute is ambiguous or unclear. in its meaning, resort must be had to judicial construction to ascertain the legislative will, *State v. Humphries,* 210 N.C. 406, 186 S.E. 473 (1936), and the courts will interpret the language to give effect to the legislative intent. *Ikerd v. R.R.,* 209 N.C. 270, 183 S.E. 402 (1936). As this Court said in *State v. Partlow,* 91

N.C. 550 (1884), the legislative intent ". . . is to be ascertained by appropriate means and *indicia*, such as the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia*, the preamble, the title, and other like means. . . ."

*In re Banks, supra,* at 239, 244 S.E. 2d at 389 (emphasis original). In the case *sub judice,* the State argues that "[t]he evolution of the present G.S. 14-54 clearly indicates the legislature's intent to expand its protection to objects other than dwelling houses or buildings." Defendant, on the other hand, contends that the general phrase "any other structure designed to house or secure within it any activity or property" must be restricted to "things of the same kind, character and nature as those specifically enumerated in 14-54(c)" under the doctrine of *ejusdem generis.* For the following reasons, we must agree with defendant and affirm the order.

"In the construction of statutes, the *ejusdem generis* rule is that where general words *follow* a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated." *State v. Fenner,* 263 N.C. 694,697-98, 140 S.E. 2d 349, 352 (1965) (emphasis original). *Accord, State v. Lee,* 277 N.C. 242, 176 S.E. 2d 772 (1970).

"Building" commonly has been defined as

a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure — distinguished from structures not designed for occupancy (as fences or monuments) . . ..

Webster's Third New International Dictionary (1968 ed.) 292. The "particular designations" in the G.S. 14-54(c) definition of "building," "dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling

house," indicate that the legislature intended the statute to proscribe breaking or entering into that which conforms to the common definition. The statutes predating the present G.S. 14-54 also support this construction of its coverage, restricting the statute to that which has — or is intended to have — one or more walls and a roof.

The original 1875 statute proscribed breaking into "a storehouse where any merchandise or other personal property is kept, or any uninhabited house . . .." 1874-75 N.C. Sess. Laws c. 166, § 1. By 1883, the statute made additional "particular designations," including a "dwelling house' and "any uninhabited house," as follows: "a store-house, shop, ware-house, banking-house, counting-house, or other building, where any merchandise, chattel, money, valuable security, or other personal property shall be . . .." 1 Code of North Carolina § 996 (1883). The statute remained essentially unchanged until 1969, when G.S. 14-54(c) appeared in its present form. *See* 1 Rev. of North Carolina § 3333 (1905); 1 Consol. Stat. of North Carolina § 4235 (1919); 1969 N.C. Sess. Laws, c. 543, § 3,

Thus, since the legislature always intended "building" to be restricted to that which has — or is intended to have — one or more walls and a roof, its common definition, the things covered by the general phrase in G.S. 14-54(c), "any other structure designed to house or secure within it any activity or property," must be of a like nature, or *ejusdem generis.* Clearly, this definition of "building" and a "fenced-in area" are not *ejusdem generis.* Although a fence may have the charactertistics of a wall, it does not have a roof. A "fenced-in area" therefore is not a "building" within the meaning of G.S. 14-54. We do not construe the evolution of the statute to expand its coverage of buildings protected from breaking or entering to that which is not *ejusdem generis,* as the State would suggest.

The order of the trial judge allowing defendant's motions to quash and dismiss the indictments is

Affirmed.

Judge BECTON concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

As pointed out by the majority, the trial judge, "[f]ollowing extensive findings of fact and conclusions of law, . . . allowed the motions to quash and dismiss the indictments." The findings of fact merely detailed the procedure leading to the order and reiterated the allegations contained in the bills of indictment and the bills of particular, but under the section denominated "conclusions of law," the trial judge elucidated on the rules of construing criminal statutes, divining legislative intent, the history of G.S. § 14-54, the definitions of various words and phrases in the statute and particularly the word "structure," other statutes under which the defendants might have been prosecuted, the decisions in other jurisdictions relating to similar statutes, and even a law review article discussing statutory burglary and entitled *The Magic of Four Walls and a Roof.* The majority opinion appears to draw heavily from the trial judge's ruminations, and in so doing, gives tacit approval not only to the procedure but to all of the substance contained in the section of the order characterized as "conclusions of law." While I do not disagree with the rules discussed by the trial judge and the majority, I cannot agree with the procedure and the application of those rules in the present case.

Although G.S. § 14-54(c) defines a building to include "any other structure designed to house or secure within it activity or property," the majority, asserting, "This is a case of first impression . . .," uses Webster's Third New International Dictionary's definition of building in concluding that the bills of indictment fail to charge defendants with an offense under G.S. § 14-54. An appropriate definition of "structure" is found in *Watson Industries, Inc. v. Shaw,* 235 N.C. 203, 69 S.E. 2d 505 (1952): "A 'structure' is 'something constructed or built.' . . .; that which is built or constructed; an edifice or a building of any kind; in the widest sense any product or piece of work artificially built up or composed of parts and joined together in some definite manner." *Id.* at 207, 69 S.E. 2d at 509. [Citations omitted.] The majority, in my opinion, focuses too much on the physical composition of a limited part of the "fenced-in area," and too little on the whole enclosure and its manifest purpose. To the majority, a roof is a determinative factor. The majority opinion indicates that a "fenced-in area" with a

roof is a structure within the meaning of the statute, and an area enclosed with four massive walls but with no roof is not.

A five and a half foot chain link fence comprises the north and east walls of the enclosure, and an extension of the same fence comprises only a portion of the south and west walls. The remainder of the south and west walls of the enclosure is comprised of the sixty and forty foot walls of a "metal building." The south and west walls of the "metal building" are extensions of the fence making the enclosure, and, conversely, the chain-link fence is merely an extension of the walls of the metal building. Significantly, the record before us does not disclose whether any portion of the compound, including the "metal building," is covered with a roof. It is obvious from the record, however, that the compound is "designed to house or secure within it . . . activity or property." Surely, the compound described in the bills of indictment and the bills of particular is a structure within the meaning of G.S. § 14-54(c), and one who breaks or enters such an area can at least be indicted and put on trial for more than misdemeanor trespass. I vote to reverse.