**UNITED STATES, Appellee,**

v.

**Specialist Four Denis M. CAHILL, 101–52–0241, United States Army, Appellant.**

**CM 448598.**

U.S. Army Court of Military Review.

30 Sept. 1986.

---

**2.** It is interesting to note that the address included "Ft. Lee."

For Appellant: Lieutenant Colonel Arthur L. Hunt, JAGC, Major Stephen R. Dooley, JAGC, Captain William E. Slade, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Denise K. Vowell, JAGC, Captain Robert R. Long, Jr., JAGC (on brief).

Before RABY, CARMICHAEL, and RICHARDSON, Appellate Military Judges.

## OPINION OF THE COURT

RICHARDSON, Judge:

Pursuant to his plea, appellant was convicted of attempting to enter a Government building with the intent to commit larceny, six specifications of larceny, wrongful appropriation, and four specifications of unlawful entry in violation of Articles 80, 121, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 921, and 930 (1982) [hereinafter cited as UCMJ]. A military judge sitting as a general court-martial sentenced him to a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances and reduction to the grade of Private E–1. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for two years and six months, forfeiture of all pay and allowances and reduction to the grade of Private E–1.

The appellant raises as the first of three assigned errors that Specification 2 of Charge I (housebreaking into a delivery van in violation of Article 130, UCMJ) fails to state an offense. He contends that the delivery van does not fall within the meaning of "building" or "structure" as required for the offense of housebreaking. We disagree.

Between 18 and 22 December 1985, appellant approached a delivery van parked next to the Furniture Mart at Schofield Barracks, Hawaii. The van was property of the Army and Air Force Exchange Service (AAFES), and was secured by banding wire. With the intent to steal something from inside the van, appellant, using a tire iron, broke the wire band that secured the rear door and gained access. He "found nothing in the van to steal."

Article 130, UCMJ, provides:

Any person subject to this chapter who unlawfully enters the building or structure of another with intent to commit a

criminal offense therein is guilty of housebreaking

. . . .

Manual for Courts-Martial, United States [hereinafter cited as M.C.M.], 1984, Part IV, para. 56c(4), in discussing the offense of housebreaking provides:

'Building' includes a room, shop, store, office, or apartment in a building. 'Structure' refers only to those structures which are in the nature of a building or dwelling. Examples of these structures are a stateroom, hold, or other compartment of a vessel, an inhabitable trailer, an inclosed truck or freight car, a tent, and a houseboat....[1]

The Court of Military Appeals in discussing the offense of housebreaking has indicated that it is designed to protect real property and the type of personal property which amounts to a structure used for habitation or storage. *See United States v. Gillin,* 25 C.M.R. 173 (C.M.A.1958); *United States v. Breen,* 36 C.M.R. 156 (C.M.A. 1966); *United States v. Taylor,* 30 C.M.R. 44 (C.M.A.1960), and *United States v. Hall,* 30 C.M.R. 374 (C.M.A.1961).

Our research reveals that the definition of "structure" is not a uniform one,[2] but in its broadest sense the word means anything constructed or built and generally refers to any product or piece of work artificially built up or composed of parts and joined together in some definite manner. *See People v. Moyer,* 635 P.2d 553, 555 (Colo.1981); *see also Watson Industries, Inc. v. Shaw,* 235 N.C. 203, 69 S.E.2d 505, 509 (1952). Thus, inclosed trailers are structures; the question is whether they are of the sort used for habitation or storage.

*Black's Law Dictionary*[3] defines "storage" as the safekeeping of goods in a warehouse or other depository and defines "store" as keeping merchandise for safe custody, to be delivered in the same condition as when received, where the safekeeping is the principal object of deposit, and not the consumption or sale. Inclosed trucks by the very nature of their physical configuration are intended for the safekeeping or storage of property over some period of time, that is, to secure property for some period of time so that it will be delivered or removed in the same condition as when received or placed in the inclosed truck. Whether the inclosed truck is mobile or immobile is not controlling. Nor is the duration the object is secured or stored in the inclosed truck controlling as long as safekeeping is the principal object of placing the property in the inclosed truck.

As an inclosed truck is specifically identified in the M.C.M., 1984, as being included within the meaning of the word "structures ... in the nature of buildings or dwellings"

---

1. Substantially identical provisions were in the M.C.M. 1951, and the M.C.M. 1969. In *Legal and Legislative Basis, Manual for Courts-Martial, 1951* at 288, the drafters provided the following insight into the use of the word "structure" in Article 130, UCMJ:

The Morgan Committee adopted the Article on housebreaking from paragraph 180*e*, MCM, 1949, but enlarged the scope of the Article by requiring the unlawful entry to be of a building 'or structure of another.' Most housebreaking statutes which use the term 'structure' do so at the end of a listing of certain kinds of buildings, vehicles, or other specifically named structures, and under such statutes, it is held that the meaning of 'other structure' is limited by the principle of *ejusdem generis.* While that principle may not be applied to Article 130, paragraph 209 places limitations upon the word 'structure' which conform with most statutory enactments on the offense....

The word 'structure' is one of the broadest words in the English language [citation omitted]. A Texas court has said, 'a structure is that which is built or constructed; an edifice or a building of any kind. In the widest terms, any production or piece of work artificially built up, or composed of parts joined together in some definite manner,' and held to be a structure within the Texas housebreaking statute, an edifice constructed by placing two forked poles in the ground, resting another upon them and stretching a wagon sheet over the top, closing one end, and placing an old door and some boxes at the other. *Favro v. State,* 39 Tex.Cr.Rep. 452, 46 SW 192 [932].

2. See *Black's Law Dictionary* 1276 (5th ed. 1979); 40 West's *Words and Phrases* (perm. ed.); *Webster's Third New International Dictionary* 2267 (1976).

3. *Black's, supra* note 2.

we are not confronted with a difficult question of statutory construction in a virgin legal area. Further, in the past, the United States Court of Military Appeals has given due deference to the Manual's definition of structures. *See Gillin,* 25 C.M.R. 173, and *Hall,* 30 C.M.R. 374; *but compare* Judge Ferguson's concurring opinion in *Hall,* 30 C.M.R. at 375.

We find as a fact that the AAFES delivery van was an inclosed truck, and thus it met the legal definition of structure within the meaning of Article 130, UCMJ. While the delivery van contained nothing the appellant chose to steal, by its very physical configuration it could have been and, undoubtedly, was normally used by AAFES to store or secure property. In fact, we note that in the case *sub judice* the AAFES delivery van was sealed with a wire band which is a security measure more commonly used to secure a storage facility or structure than a vehicle used for mere conveyance. Furthermore, the break-in occurred only days before Christmas, a time when AAFES may have demanded additional storage space and logically relied upon the van to provide it. The appellant certainly believed the delivery van was likely to have property stored inside or he surely would not have broken the band and entered therein. Therefore, we are satisfied that the delivery van fell within the definition of a "structure" under Article 130, UCMJ. *See Breen,* 36 C.M.R. 156.

■ The appellant's second assignment of error is that his plea of guilty to Specification 3 of Charge I (housebreaking into an AAFES "Matson" trailer in violation of Article 130, UCMJ) was improvident. He contends that "18 wheelers" are commonly used for transporting freight by land and are not usually used for storage or habitation.

On the evening of 24 December 1985 appellant broke into a "Matson" trailer located adjacent to the AAFES Furniture Mart at Schofield Barracks. He gained access by cutting the padlock off the door using a set of bolt cutters. Once inside, appellant stole three brass framed mirrors, four plant stands, two cabinet doors, a bookcase, and a box of automobile floor mats. At trial, appellant referred to the "Matson" trailer as an "18 wheeler." A "Matson" trailer is the type of large semi-trailer used to ship cargo by land, sea or rail. *United States v. Kellom,* CM 439284 (A.C.M.R. 27 June 1980) (unpub.); *United States v. Barton,* CM 439282 (A.C.M.R. 27 June 1980) (unpub.). The name "Matson" refers to the Matson Navigation Company which uses such trailers. *Barton,* slip. op. at 2.

By their very configuration, these trailers are designed to secure property for various periods of time, with or without a cab attached, and are "structures" within the meaning of Article 130, UCMJ. They clearly fall within the example of "an inclosed truck or freight car." *Kellom,* slip. op. at 2 and *Barton,* slip. op. at 2; *see also Hall,* 30 C.M.R. 374. The fact that the trailer may be moved from one location to another while property is stored inside does not alter this fact.

■ The specification alleged all the elements of the offense charged, the appellant pled guilty to the specification, the providency inquiry established that the appellant believed he was guilty, and the factual circumstances revealed by the appellant objectively support the guilty plea.[4] Therefore, the appellant's plea was provident.

■ Appellant's final assignment of error is that the military judge erred by failing to grant four days administrative credit against appellant's sentence for pretrial restriction equivalent to confinement. The appellant was restricted to his battalion area on 8 January 1986. He apparently violated the terms of this restriction and the terms of the restriction were made more onerous from 24 February 1986 until his trial on 28 February 1986. Initially

---

4. *United States v. Foster,* 14 M.J. 246 (C.M.A. 1982); *United States v. Davenport,* 9 M.J. 364 (C.M.A.1980).

**548**

appellant was restricted to Building 3002, the Signal Battalion, except he could go to the chapel, the PX and other such places with an NCO escort. Building 3002 contained unit areas and a snack bar. On 24 February the terms were tightened so that he reported to the orderly room at the beginning of the day and remained there the entire day. He was escorted everywhere he had to go—even to the latrine. After duty hours, he was required to sign in every half hour with the charge of quarters (CQ) until 2200 hours, at which time he was permitted to go to his room and sleep until the next duty day began. During nonduty days he was required to remain at the CQ desk from 0830 until 1630 hours and then sign-in every half hour until 2200 at which time he was permitted to return to his room and sleep. Apparently, appellant was free to make telephone calls, receive visitors and lock his room but did not perform any duties.

In view of the onerous conditions of the restriction from 24 February to 28 February, we conclude that this restriction was tantamount to confinement and order administrative credit of four days. *United States v. Mason,* 19 M.J. 274 (C.M.A.1985); *United States v. Smith,* 20 M.J. 528 (A.C. M.R.) *petition denied,* 21 M.J. 169 (C.M.A. 1985).

The findings of guilty and the sentence are affirmed, except that the appellant shall be given four days administrative credit against his sentence to confinement for the restriction served from 24 to 28 February 1986.

Senior Judge RABY and Judge CARMICHAEL concur.