**UNITED STATES, Appellee,**

v.

**Private E2 Timothy W. DEMMER, 205–58–2456, United States Army, Appellant.**

**CM 448494.**

U.S. Army Court of Military Review.

12 June 1987.

---

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Kathleen A. Vanderboom, JAGC, Captain Lida A. Stout, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Denise K. Vowell, JAGC, Captain Robert R. Long, Jr., JAGC (on brief).

Before DeFORD, WILLIAMS and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT

### PER CURIAM:

Pursuant to a pretrial agreement, appellant entered pleas of guilty and was convicted by a military judge sitting as a general court-martial of attempted unlawful entry, damaging government property, larceny, assault upon a military policeman, housebreaking, and drunk and disorderly in violation of Articles 80, 108, 121, 128, 130 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 880, 908, 921, 928, 930, and 934 (1982), respectively. His approved sentence included a bad-conduct discharge, confinement for eight months and twenty-three days, forfeiture of all pay and allowances, and reduction to the grade of Private E–1.

### I

Appellant alleges the Specification of Charge III (housebreaking into a snack delivery vehicle) fails to state an offense. The facts disclose that, during the early morning hours of 30 June 1985, appellant came upon an Army and Air Force Exchange Service [AAFES] "Running Chef" mobile snack truck which was parked behind the main AAFES Exchange at the Lucius D. Clay Kaserne, Garlstedt, Germany. The vehicle was described in a stipulation of fact as a "GMC stand up self service type enclosed truck" utilized by AAFES as a "mobile snack wagon." Appellant gained entry to the truck by "yanking off" the rear door handle. While inside the vehicle, appellant was discovered by a civilian security guard who detained him until military police arrived.

As noted, appellant entered a plea of guilty to this specification and charge. The military judge then explained the elements

of the offense of housebreaking with the intent to commit larceny. Thereafter appellant provided appropriate answers to the judge's inquiries as to the offense.[1]

Article 130, UCMJ, provides: "Any person subject to this chapter who unlawfully enters the building or structure of another with intent to commit a criminal offense therein is guilty of housebreaking...." Manual for Courts-Martial, United States, 1984 [hereinafter M.C.M., 1984], Part IV, para. 56c(4), in discussing the offense of housebreaking, states:

"Building" includes a room, shop, store, office, or apartment in a building. "Structure" refers only to those structures which are in the nature of a building or dwelling. Examples of these structures are a stateroom, hold, or other compartment of a vessel, an inhabitable trailer, an *inclosed truck* or freight car, a tent, and a houseboat....

(Emphasis supplied.)

In *United States v. Cahill*, 23 M.J. 544 (A.C.M.R.1986), this court had occasion to address whether trailers and delivery vans were "structures" within the meaning of the foregoing statute. There, it was held that an AAFES delivery van was an inclosed truck, and consequently, a structure within the meaning of Article 130, UCMJ. In *Cahill*, at the time of the offense, the vehicle was being primarily used for storage.

Appellant urges that an AAFES snack truck does not qualify as a building or structure within the meaning of the statute as the doctrine of *ejusdem generis*[2] dictates that the meaning of the word "structure" is limited by the words "building ... of another." Consequently, a structure must be in the nature of a building or dwelling. Government appellate counsel allege the AAFES snack truck was used for storage, and, under the authority of *Cahill*, we should reject appellant's allegation. Obviously, the question here is the scope of Article 130, UCMJ.

We first observe that a GMC stand-up, self-service type inclosed truck must, by its nature, be somewhat of a hybrid vehicle. When used as a snack wagon, it is driven to respective sale sites where soldiers may purchase food products they, we assume, personally select. We make this assumption because the description given states the truck had the capacity for self-service. It would seem apparent that, to some degree, the food products sold from the vehicle would also be stored there during periods in which the vehicle is not dispensing them. Thus, such a vehicle, when in use as a snack truck, would be carrying merchandise for sale and could hardly be classified as a "structure" during such use. On the other hand, when not used in sales, the vehicle would store that same merchandise (personal property) until the vehicle was used again for sales. During such a storage period, safekeeping of the personal property would be the vehicle's primary purpose.

■ We believe the character of the inclosed truck's use at the time of the unlawful breaking and entering must determine whether the vehicle qualifies as a structure within the meaning of Article 130, UCMJ. Here, the entry was made at approximately 0300–0400 on 30 June 1985. The vehicle was parked behind the main post exchange and was not being used for sales. Rather, it was storing merchandise for future sale. Therefore, we are satisfied the vehicle qualified as a structure within the meaning of Article 130, UCMJ, and the specification does in fact allege an offense. Accordingly, we find no error.

---

1. Appellant advised the military judge that on the occasion in question he was drunk and had no memory of the affair. Nevertheless, he stated he had attended the Article 32, UCMJ, pretrial investigation; had listened to the witnesses testify; and was convinced he had broken into the snack truck and stolen property found therein. He described a drinking spree lasting from about noon the previous day in which he consumed part of a fifth of whiskey and a large quantity of both German and American beer.

2. Black's Law Dictionary 464 (5th ed. 1979) provides that the term *ejusdem generis* means "of the same kind, class, or nature."

## II

■ Appellant further alleges the military judge erred in failing to dismiss some of the charges and their specifications on speedy trial grounds.[3] The thrust of appellant's allegation is that the period 9 October through 20 December 1985, which was expended in conducting a sanity evaluation requested by the trial defense counsel, was unreasonable under the circumstances and should not have been deducted from the processing time for speedy trial purposes.

The record discloses appellant was placed under "local command control" (a status equivalent to restriction) on 1 July 1985. His trial commenced on 23 December 1985, which was 175 days after 1 July 1985. Trial defense counsel submitted a request for psychiatric evaluation on 2 October 1985. On 7 and 9 October 1985, trial defense counsel reinforced the request with addena, which resulted in the convening authority, on 9 October 1985, ordering the requested evaluation. Appellant's records were screened by a psychiatrist on 25 October 1985. Appellant was personally evaluated on 15 November 1985 and was hospitalized for evaluation and testing during the period 15 November through 3 December 1985. The official psychiatric report was received by trial counsel and trial defense counsel on 20 December 1985.

The military judge denied the motion to dismiss Charges I and III for lack of speedy trial, stating:

I am satisfied that the procedures used in this mental examination at the 97th General Hospital, of the accused, are those procedures set forth in Appellate Exhibit IV; therefore, the period from 9 October to 20 December, inclusive, may be deducted for speedy trial purposes; that is, 73 [sic] days, in accordance with Rule for Courts-Martial 707(c)(1)(a); however, based on my experience, this period to screen the accused's records from 9 to 25 October, appears too long. And, to schedule a personal evaluation taking from 9 October to 15 November, also, appears too long. Each case must be viewed on an individual basis and, in the future, the government should be prepared to establish a sound basis for these noted delays. Although the exclusion speaks in terms of any periods of delay, these delays must be reasonable. See the discussion to Rule 707.... [T]he motion is denied.

■ An accused shall be brought to trial within 120 days after the earlier of notice of preferral of charges or the imposition of restraint. R.C.M. 707(a). Certain periods of time are excludable. R.C.M. 707(c). Specifically, R.C.M. 707(c)(1)(A)[4] states

---

3. At trial, the speedy trial motion was directed to Charges I and III. On appeal, appellant has expanded his motion to encompass Charges II and IV. Appellant is foreclosed from arguing on appeal that Charges II and IV should be dismissed for lack of speedy trial because he failed to make a timely motion for such dismissal *at trial*. M.C.M., 1984, Rules for Courts-Martial [hereinafter R.C.M.] 905(e) and 907(b)(2)(A). *See United States v. Sloan*, 47 C.M.R. 436 (A.C.M.R.1973), *affirmed*, 48 C.M.R. 211 (C.M.A.1974). Consequently, our consideration of the alleged error will be limited to the *trial* motion to dismiss Charges I and III.

In opposition to appellant's motion to dismiss Charges I and III for lack of speedy trial, the trial counsel alerted the military judge to alternative government arguments, to wit: (1) the period of delay resulting from a mental status evaluation of appellant reduced the government's accountability below 120 days; and, (2) appellant's pretrial restraint beginning on 1 July 1985 was interrupted for several significant

periods, all of which reduced the government's accountability below 120 days. The military judge denied appellant's motion based upon the delay occasioned by the mental status evaluation. Thus, the government was not required by the military judge to present evidence in support of its alternative argument. Later in the trial, after the judge found appellant's pleas to be provident, evidence was presented, during litigation concerning the length and nature of the pretrial restraint, as to the periods between 1 July 1985 and 26 September 1985 (date of preferral of original charges) when appellant was released from pretrial restraint. In view of our disposition of the speedy trial issue, based on the delay for the mental status evaluation, we do not address whether the periods of release from pretrial restraint reduced the government's accountability to 120 days or less.

4. R.C.M. 707(c) provides in part, "The following periods shall be excluded when determining whether the period in subsection (a) of this rule has run—

that periods of delay resulting from an examination into the mental responsibility or capacity of an accused are excludable for speedy trial purposes. Additionally, brief periods of inactivity in an otherwise active prosecution are generally not considered unreasonable or oppressive. The touchstone for measurement of compliance with the speedy trial rules is not constant motion, but reasonable diligence in bringing the charges to trial. *See United States v. Tibbs,* 35 C.M.R. 322, 325 (C.M.A.1965).

Here, the prosecution used a total of 175 days from the inception of the original restriction or "local control" to bring appellant to trial. Even though this restraint was, at best, intermittent, the parties stipulated at trial that the inception date of 1 July 1985 was the date the accountable period under R.C.M. 707 began to run. Seventy-two days of the total period were consumed in processing the defense-requested psychiatric evaluation. R.C.M. 707(c)(1)(A) provides such time as being excludable from the prosecution's accountability for speedy trial purposes. Our review of the use of that seventy-two days reveals only brief periods of inactivity in an otherwise active prosecution. The appellant was hospitalized for eighteen days during the examination, and it may well be that the examination could have been conducted in a speedier fashion. However, this court is cognizant that medical studies of the human mind are far from an exact science. We are loath to impose time limits which could have the tendency to limit proper mental examinations of patients who have been charged with offenses. *See United States v. Badger,* 7 M.J. 838, 840 (A.C.M.R.), *petition denied,* 7 M.J. 392 (C.M.A.1979). We believe it appropriate to evaluate each case on its own merits.

(1) Any periods of delay resulting from other proceedings in the case, including:
(A) Any examination into the mental capacity or responsibility of the accused: ...."

5. This court has combined appellant's third and fifth assignments of error into this single assignment as these matters are so closely related.

We find seventy-two days were properly deducted from the prosecution's processing time, leaving the prosecution with an accountable time period of 103 days, well below the prescribed 120–day time limit. Accordingly, we find no denial of appellant's right to a speedy trial.

### III [5]

The military judge found appellant's pretrial restriction from 8–14 November 1985 tantamount to confinement. The judge denied appellant's motion to find a period of restriction from 4 December to 23 December 1985 tantamount to confinement. Appellant now alleges that, in addition to the restriction from 4 to 23 December being tantamount to confinement, he is entitled to additional day-for-day credit under R.C.M. 305(k) for each day of restriction tantamount to confinement.[6] Because he has served his approved sentence to confinement, appellant argues he should receive alternative relief from the remaining portions of his sentence. We disagree.

We find the limits of appellant's restriction from 4 to 23 December 1985 not tantamount to confinement. *See Wiggins v. Greenwald,* 20 M.J. 823 (A.C.M.R.), *writ appeal denied,* 20 M.J. 196 (C.M.A.1985); and *Washington v. Greenwald,* 20 M.J. 699 (A.C.M.R.), *writ appeal denied,* 20 M.J. 324 (C.M.A.1985), *reaffirmed sub nom., United States v. Washington,* CM 446797 (A.C.M.R. 3 Jul. 1985) (Unpub.).

With respect to appellant's request for R.C.M. 305(k) credit, we note the military judge gave appellant *Mason/Smith* credit[7] for seven days for the period 8–14 November. Appellant was entitled to only six days credit for this time. *United States v. New,* 23 M.J. 889 (A.C.M.R.1987). Applying the analysis of *United States v.*

6. *See United States v. Gregory,* 21 M.J. 952 (A.C.M.R.), *affirmed,* 23 M.J. 246 (C.M.A.1986) (summary disposition).

7. *United States v. Mason,* 19 M.J. 274 (C.M.A. 1985) (summary disposition); *United States v. Smith,* 20 M.J. 528 (A.C.M.R.), *petition denied,* 21 M.J. 169 (C.M.A.1985).

*Freeman*, 24 M.J. 547 (A.C.M.R.1987), recognizing the military judge's grant of seven days credit under *Mason/Smith* as law of the case for *Mason/Smith* purposes *only*, we find no violations of R.C.M. 305(f), (h), (i) or (j), and, hence, no entitlement to additional credit under R.C.M. 305(k).

## IV

■ Finally, appellant alleges the Specification of Additional Charge I (attempted unlawful entry) is multiplicious for findings with the Specification of Additional Charge II (damaging a window). The military judge held they were multiplicious for sentencing purposes only. The record of trial establishes that appellant threw a rock through the window of Building T–2, Clay Kaserne, Garlstedt, Germany, in order to accommodate an unlawful entry into the building. As such, the rock-throwing was part of an indivisible crime which resulted in the two charged specifications enumerated above. The offenses were multiplicious for both findings and sentence. *United States v. Baker*, 14 M.J. 361, 366 (C.M.A. 1983); *United States v. Straughan*, 19 M.J. 991 (A.C.M.R.1984), *petition denied*, 19 M.J. 322 (C.M.A.1985). As we have noted, the military judge held the two specifications were multiplicious for sentence purposes. Consequently, appellant was not prejudiced. We will consolidate the two specifications into a single specification.

The court has considered the issue asserted by appellant under *United States v. Grostefon*, 12 M.J. 431, 436 (C.M.A.1982), in our disposition of the speedy trial issue. The remaining issue specified by the court is deemed to be without merit.

Accordingly, the Specification of Additional Charge I and the Specification of Additional Charge II are consolidated by adding at the end of the Specification of Additional Charge I, after the word "States", the words and figures "by will-

fully damaging, by breaking, a window, the amount of said damage being less than $100.00". The findings of guilty of Additional Charge I and its Specification, as amended, are affirmed. The remaining findings of guilty and the sentence are affirmed.

DeFORD, Senior Judge, concurring in part, dissenting in part, but concurring in the result:

I fully agree with my brothers' disposition of this case with the exception of that portion of Part III of the opinion which deals with appellant's allegation concerning his entitlement to additional credit under R.C.M. 305(k) for the period 8 to 14 November 1985 and this court's determination that there was no violation of R.C.M. 305(f), (h), (i) or (j) and hence, no entitlement to additional credit under R.C.M. 305(k).

Appellant raised the issue of entitlement to additional credit under R.C.M. 305(k) for the first time on appeal. He did raise the issue of restriction tantamount to confinement before the trial court. Consequently, neither counsel nor the trial judge addressed the R.C.M. 305(k) issue at the original trial. This situation places this court in the position of attempting to determine facts which were not fully developed at the trial level if we consider the issue on the merits. Such a practice, in most cases, is fraught with the danger of error, impedes appellate processing of properly raised issues, and, as a policy matter, encourages "mini-trials" at the appellate level. All of which, in my view, are detrimental to the proper administration of justice within the court system.

R.C.M. 1001(b)(1)[1] provides for waiver if objections are not made to information contained in the charge sheet relating to the

---

1. R.C.M. 1001(b)(1) provides in pertinent part that:

Trial counsel shall inform the court-martial of the data on the charge sheet relating to the ... duration and nature of any pretrial re-

straint.... If the defense objects to the data as being materially inaccurate or incomplete, or containing specified objectionable matter, the military judge shall determine the issue. Objections not asserted are waived.

duration and nature of any pretrial restraint. I interpret this rule to require trial defense counsel to raise any and all objections concerning pretrial restraint before the trial court or be subject to waiver. The application of this rule is sufficiently broad to include prayers for relief under R.C.M. 305(k).[2] *See United States v. Ecoffey*, 23 M.J. 629 (A.C.M.R.1986) and the cases cited therein.[3] Accordingly, I would prefer to hold that the issue of whether the appellant was entitled to an additional day-for-day credit under R.C.M. 305(k) for restriction tantamount to confinement as waived. R.C.M. 1001(b)(1).

2. R.C.M. 305 provides in pertinent part that:
(a) *In general.* Pretrial confinement is physical restraint, imposed by order of competent authority, depriving a person of freedom pending disposition of charges.

....

(f) *Military counsel.* If requested by the prisoner, military counsel shall be provided to the prisoner before the initial review under subsection (i) of this rule....

....

(h) *Notification and action by commander.*

(1) *Report.* Unless the commander of the prisoner ordered the pretrial confinement, the commissioned, warrant, non-commissioned, or petty officer to whose charge the prisoner was committed shall, within 24 hours after that commitment, cause to be made a report to the commander which shall contain the name of the prisoner, the offenses charged against the prisoner, and the name of the person who ordered or authorized confinement.

....

(i) *Procedures for review of pretrial confinement.*

(1) *In general.* A review of the adequacy of probable cause to believe the prisoner has committed an offense and of the necessity for continued pretrial confinement shall be made within 7 days of the imposition of confinement.

....

(j) *Review by military judge.* Once the charges for which the accused has been confined are referred to trial, the military judge shall review the propriety of pretrial confinement upon motion for appropriate relief.

....

(k) *Remedy.* The remedy for noncompliance with subsection (f), (h), (i), or (j) of this rule shall be an administrative credit against the sentence adjudged for any confinement served as the result of such noncompliance. Such credit shall be computed at the rate of 1 day credit for each day of confinement served as a result of such noncompliance. This credit is to be applied in addition to any other credit the accused may be entitled as a result of pretrial confinement served. This credit shall be applied first against any confinement adjudged. If no confinement is adjudged, or if the confinement adjudged is insufficient to offset all the credit to which the accused is entitled, the credit, using the conversion formula under R.C.M. 1003(b)(6) and (7), shall be applied against hard labor without confinement, restriction, fine, and forfeiture of pay, in that order, if adjudged. For purposes of this subsection, 1 day of confinement shall be equal to 1 day of total forfeiture or a like amount of fine. The credit shall not be applied against any other form of punishment.

R.C.M. 305 implicitly requires counsel to request the relief to which he believes he is entitled under this rule.

3. Much of this court's difficulty and uncertainty in applying the waiver rule of R.C.M. 1001(b)(1) and its predecessor, Manual for Courts-Martial, United States, 1969 (Revised edition), para. 75(b)(2), stems from the action of the United States Court of Military Appeals in *United States v. Mason*, 19 M.J. 274 (C.M.A.1985) (summary disposition). That court granted requested relief in a summary disposition wherein appellant raised for the first time on appeal his entitlement to 42 days administrative credit on his approved sentence to confinement arising from pretrial confinement and pretrial restriction tantamount to confinement. See also the discussion concerning this same problem in *United States v. Smith*, 20 M.J. 528, 532-533 (A.C.M.R.), *petition denied*, 21 M.J. 169 (C.M.A.1985). Admittedly, *Mason* in part involved administrative credit for restriction tantamount to confinement, but whether restriction tantamount to confinement or additional credit upon a sentence to confinement for violation of R.C.M. 305, a factual determination is required and in the view of this writer should be required at the trial level. If R.C.M. 1001(b)(1) is not a viable rule, the United States Court of Military Appeals should overrule it, not disregard its existence.