IN THE SUPREME COURT OF NORTH CAROLINA

No. 39A22

Filed 23 August 2024

STATE OF NORTH CAROLINA

v.

ROBIN APPLEWHITE


Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 281 N.C. App. 66 (2021), finding no error in judgments entered on 5 March 2019 by Judge Thomas H. Lock in Superior Court, Cumberland County. On 4 May 2022, the Supreme Court allowed defendant's petition for discretionary review of additional issues. Heard in the Supreme Court on 15 February 2024.

*Joshua H. Stein, Attorney General, by A. Mercedes Restucha-Klem, Assistant Attorney General, for the State.*

*Michael E. Casterline for defendant-appellant.*


BARRINGER, Justice.

In this case, we are tasked with determining whether the Court of Appeals erred in affirming the trial court's judgments following a jury's verdict finding defendant guilty of twelve counts of human trafficking, eleven counts of promoting prostitution, four counts of conspiracy to promote prostitution, and attaining habitual felon status. For the following reasons, we affirm the decision of the Court of Appeals.

## I.    Background

Between December 2012 and March 2015, defendant met several women, including A.C., H.M., A.B., and M.F.[1] Defendant supplied the women with heroin, to which they quickly became addicted. Defendant used heroin to force the women to engage in prostitution arranged by defendant and his wife via online advertisements on Backpage, a website used to solicit prostitution customers. The women used the money they received to pay defendant for heroin as well as their basic needs. They paid defendant far more than what the heroin was worth. Defendant withheld from the women drugs, food, sleep, and any means of communication. He also provided the women housing in exchange for payment but would occasionally lock them in his basement or a hotel room. Defendant transported the women throughout North Carolina, and across state lines to Virginia, South Carolina, and Florida to engage in prostitution.

Defendant was indicted and convicted of five counts of trafficking A.C. between December 2012 and January 2013. Defendant used drugs to entice A.C. to lease a house that defendant would use for prostitution and storing drugs. Ultimately, defendant convinced A.C. to engage in prostitution. Defendant and his wife posted A.C.'s advertisement on Backpage at least 197 times in three cities. Defendant scheduled A.C. to engage in at least ten appointments per night.

---

[1] The parties agree to the use of pseudonyms to protect the women's identities.

Defendant was indicted and convicted of two counts of trafficking H.M. between January 2014 and March 2014. Defendant met H.M. when he began supplying her heroin, which H.M. smoked daily. Eventually, defendant convinced H.M. to prostitute for him via online advertisements. Defendant agreed to support H.M. in exchange for prostituting. Defendant drove H.M. to Greensboro, Raleigh, and South Carolina while she was under the influence of heroin. In addition, defendant would lock H.M. in her hotel room or his basement without food or drugs.

Defendant was indicted and convicted of three counts of trafficking A.B. between January 2014 and April 2015. Defendant first met A.B. when he approached her outside a hotel and gave her pills, after which they engaged in sexual acts. A.B. traveled with defendant to his home where defendant offered A.B. what she thought was cocaine but was in fact heroin. At first, defendant provided A.B. with heroin without asking for anything in return. Ultimately, defendant forced A.B. to engage in acts of prostitution in exchange for drugs and housing. Defendant advertised A.B. online and drove A.B. to Charlotte and Raleigh to engage in prostitution.

Defendant was indicted and convicted of two counts of trafficking M.F. between March 2014 and April 2015. Before meeting defendant, M.F. used crack cocaine, but she began using heroin after she met defendant. Defendant treated M.F. like a girlfriend, but he still had her engage in prostitution. Advertisements for M.F. were posted on Backpage over 219 times.

Beginning on 18 February 2019, defendant represented himself pro se at trial. M.F. died before trial, but A.C., H.M., and A.B., among others, testified to their working arrangements with defendant. The jury returned a unanimous verdict finding defendant guilty of the above-listed charges. The jury found defendant not guilty of charges related to two other victims. Defendant was calculated as a prior record level five offender based on fourteen previous record points. Defendant did not stipulate in writing to the State's calculation of his prior record points. Defendant was sentenced to 2880 to 3744 months to be served consecutively, totaling 240 to 312 years in prison. The trial court also required defendant to register as a sex offender.

Defendant appealed to the Court of Appeals. The Court of Appeals issued a divided opinion finding no error by the trial court. *State v. Applewhite*, 281 N.C. App. 66, 81 (2021). Judge Arrowood concurred in part and dissented in part. In his dissent, he argued that human trafficking is a continuing offense because the statute criminalizing human trafficking does not define the unit of prosecution. *Id.* (Arrowood, J., concurring in part and dissenting in part). Having committed a continuing offense, defendant could only be convicted of a single, continuing count of human trafficking per victim. *Id.* Therefore, the dissenting judge would remand defendant's case to the trial court to vacate all but one count of human trafficking per victim. *Id.* at 82.

## II.    Standard of Review

This Court reviews questions of statutory interpretation de novo. *High Point Bank & Trust Co. v. Highmark Props., LLC*, 368 N.C. 301, 304 (2015). This Court reviews a challenge to the sufficiency of an indictment de novo. *State v. Oldroyd*, 380 N.C. 613, 617 (2022).

This Court exercises de novo review over "questions of law concerning the trial court's alleged nonconformance with statutory requirements." *State v. Flow*, 384 N.C. 528, 546 (2023) (extraneity omitted). This Court will not vacate a judgment by the trial court unless the defendant can show such error prejudiced him. *Id.* at 549.

## III.    Analysis

Defendant filed a notice of appeal based on a dissent at the Court of Appeals. Defendant also filed a petition for discretionary review of additional issues with this Court, which was allowed. On appeal, defendant argues first that he may only be convicted of a single count of human trafficking per victim. Second, defendant argues that the trial court erred when it failed to compare the elements of defendant's earlier federal firearms conviction to a North Carolina offense. For the following reasons, we affirm the decision of the Court of Appeals that found no error in the trial court's judgments.

### A. Defendant may be convicted of multiple counts of human trafficking per victim.

#### 1. Unit of Prosecution

At issue in this case is the unit of prosecution under N.C.G.S. § 14-43.11 (2021). Section 14-43.11[2] states, in pertinent part:

> (a) A person commits the offense of human trafficking when that person (i) knowingly or in reckless disregard of the consequences of the action recruits, entices, harbors, transports, provides, or obtains by any means another person with the intent that the other person be held in involuntary servitude or sexual servitude or (ii) willfully or in reckless disregard of the consequences of the action causes a minor to be held in involuntary servitude or sexual servitude.
>
> . . . .
>
> (c) Each violation of this section constitutes a separate offense and shall not merge with any other offense. Evidence of failure to deliver benefits or perform services standing alone shall not be sufficient to authorize a conviction under this section.
>
> . . . .

"In resolving issues of statutory construction, we look first to the language of the statute itself." *Raleigh Hous. Auth. v. Winston*, 376 N.C. 790, 795 (2021) (quoting *Walker v. Bd. of Trs. of the N.C. Loc. Gov'tal Emps.' Ret. Sys.*, 348 N.C. 63, 65 (1998)). "When the [language] in the statute is unambiguous, the [language] 'should be understood in accordance with its plain meaning.'" *Id.* (quoting *Fid. Bank v. N.C. Dep't of Revenue*, 370 N.C. 10, 20 (2017)).

---

[2] N.C.G.S. § 14-43.11 was amended effective 1 December 2023 to apply to offenses committed on or after that date. As the offenses occurred before 1 December 2023, this Court will analyze the statute as effective in 2022.

Here, the statutory language is clear and unambiguous. Subsection (a) of N.C.G.S. § 14-43.11 states that "[a] person commits the offense of human trafficking when that person" (1) "knowingly or in reckless disregard of the consequences of the action"; (2) "recruits, entices, harbors, transports, provides or obtains by any means [the victim]"; (3) "with the intent that [the victim] be held in . . . sexual servitude." N.C.G.S. § 14-43.11(a). The second element of section 14-43.11 is satisfied each time a defendant engages in any of the actions listed in subsection (a), "*or*" any other conduct that constitutes "obtain[ing]" the victim for the illicit purposes described in the statute. *Id.* (emphasis added).

Furthermore, subsection (c) of the human trafficking statute specifically states that "[e]ach violation of this section constitutes a separate offense and shall not merge with any other offense." *Id.* § 14-43.11(c). The plain language of subsection (c) clarifies that human trafficking is not a continuing offense. The language specifies that violations are *separate* offenses. The explicit language in the statute that each violation is a separate offense demonstrates that each distinct act of recruiting, enticing, harboring, transporting, providing or obtaining a victim can be separately prosecuted. In order to give meaning to every word of the statute, the statute can only be read to reference multiple criminal acts.

Moreover, the statute explicitly states that violations shall not merge with other offenses. This anti-merger clause demonstrates that: (1) a single defendant can commit the offense of human trafficking through multiple acts with the same victim;

(2) each separate violation "of this section" may be prosecuted; and (3) the several violations shall not merge with each other. *Id.* § 14-43.11(c). Thus, a defendant may be charged separately for each time the defendant violates the human trafficking statute, regardless of whether each violation involves the same victim. *See State v. Perry*, 316 N.C. 87, 104 (1986) ("[D]efendant may be convicted and punished separately for trafficking in heroin by possessing 28 grams or more of heroin, trafficking in heroin by manufacturing 28 grams or more of heroin, and trafficking in heroin by transporting 28 grams or more of heroin even when the contraband material in each separate offense is the same heroin."); *see also State v. Pipkins*, 337 N.C. 431, 434 (1994) (citing *Perry*, 316 N.C. at 102–04). If the legislature clearly intends to define each act as a separate offense and each act has distinct elements, then multiple charges do not violate double jeopardy. *See Blockburger v. United States*, 284 U.S. 299, 303–04 (1932).

The dissent disagrees. It argues that because the legislature included trafficking language in other statutes, the anti-merger provisions only apply to those statutes. But the plain language of N.C.G.S. § 14-43.11 demonstrates legislative intent—that the anti-merger provision applies equally to the human trafficking statute. When "the language of a statute expresses the legislative intent in clear and unambiguous terms, the words employed must be taken as the final expression of the meaning intended unaffected by its legislative history." *Lunsford v. Mills*, 367 N.C.

618, 626 (2014) (quoting *Piedmont Canteen Serv., Inc. v. Johnson*, 256 N.C. 155, 161 (1962)).

As further illustrated by the statute's catch-all language, "or obtain[ ] by any means," the list, "recruits, entices, harbors, transports, [or] provides," identifies different factual bases, or means, for satisfying the second element of the offense of human trafficking.[3] *See Mathis v. United States*, 579 U.S. 500, 514–17 (2016) (discussing the difference between elements of an offense and means for committing an offense); *see also Richardson v. United States*, 526 U.S. 813, 817 (1999) ("[A] federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime."); *King v. United States*, 965 F.3d 60, 66 (1st Cir. 2020) ("Means . . . are the different ways that a single element of a crime may be committed; and unlike elements, the government need not prove a particular means to obtain a conviction (any of the listed means will do)."). "[I]f a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Mathis*, 579 U.S. at 519. Moreover, a state's indictment listing the alternative means with a disjunctive "or" shows courts that "each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.*; *accord State v. Moir*, 369 N.C. 370, 381 n.8

---

[3] This language is identical in the versions of N.C.G.S. § 14-43.11 which apply to all offenses alleged in this case.

(2016) (recognizing that a statute may "specif[y] several alternative *means* of committing a crime . . . instead of setting out alternative offenses made up of differing *elements*").

Here, the language of the statute provides different means to satisfy the second element of the crime of human trafficking. The statute lists numerous actions followed by the language "or obtains by any means," demonstrating that the prior listed terms are "means" to satisfy that element of the statute. To "obtain" means "[t]o bring into one's own possession; to procure." *Obtain,* Black's Law Dictionary (12th ed. 2024); *see Obtain*, Garner's Dictionary of Legal Usage (3d ed. 2011) ("[O]btain is a formal word for *get*."). The language of the statute leaves open the door for the prosecutor to prove not just one of the listed means but rather any other means by which the defendant "obtain[ed]" the victim. *See United States v. Cooper*, No. 21-CR-10184-NMG, 2024 U.S. Dist. LEXIS 6621, at *1 (D. Mass. Jan. 12, 2024) (stating that the language in 18 U.S.C. § 1591(a)(1), which criminalizes sex trafficking and closely mirrors the language of N.C.G.S. § 14-43.11(a), "constitute[s] means, not elements").

To determine whether the legislature intended for multiple words to constitute distinct offenses, the Supreme Court of the United States has looked to whether the "statutory alternatives carry different punishments." *Mathis*, 579 U.S. at 518. Regardless of how the defendant controls or "obtains" another individual, each violation of this statute constitutes a single offense because this statute does not distinguish the punishment based on the various means provided. *See id.* (citing

*Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)) ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."). "The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." *Brown v. Ohio*, 432 U.S. 161, 165 (1977). In the instant case, a defendant who violated subsection (a) during the time of the offenses charged was "guilty of a Class F felony if the victim of the offense is an adult." N.C.G.S. § 14-43.11(c) (2016).[4] Accordingly, this statute does not distinguish the punishment based on the various means provided.

The evil sought to be prevented by the legislature is the trafficking of persons for the purpose of engaging in prostitution. *See* N.C.G.S. § 14-43.11. "Trafficking" can occur in numerous ways, all of which revolve around whether the defendant did so "with the intent that the [victim] be held in involuntary servitude or sexual servitude." *Id.* § 14-43.11(a). Thus, a defendant may be convicted of multiple counts of human trafficking per victim.

"The elementary rule is that every reasonable [statutory] construction must be resorted to, in order to save a statute from unconstitutionality." *Hooper v. California*, 155 U.S. 648, 657 (1895); *accord Skilling v. United States*, 561 U.S. 358, 406 (2010)

---

[4] Effective December 2017, the penalty for violating N.C.G.S. § 14-43.11 was increased to a Class C felony.

("[I]f this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction." (quoting *United States v. Harriss*, 347 U.S. 612, 618 (1954))). This interpretation of N.C.G.S. § 14-43.11 is reasonable—that defendant has violated the human trafficking statute each instance he employs one of the means contemplated by statute.

Our dissenting colleagues disagree. The dissent alleges that defendant is facing multiple punishments for the same conduct, in violation of the Double Jeopardy Clause.[5] Where, as here, the State chooses to utilize the statutorily provided short form indictment, "[e]xamination of the facts underlying each charge [ ] more accurately illustrates whether defendant has been placed in double jeopardy." *State v. Rambert*, 341 N.C. 173, 176 (1995). Examination of the facts here clearly indicates that defendant employed a variety of means to traffic multiple women throughout the time periods specified in the indictments. Thus, we cannot conclude that defendant has been punished more than once for the same conduct.

Furthermore, the dissent creates ambiguity and substitutes its will when, as

---

[5] While defendant focused his argument on the sufficiency of the indictment, he briefly mentioned double jeopardy. Since the parties did not fully develop a double jeopardy argument, attempting to resolve a potential double jeopardy issue without complete briefing is improper. *See* N.C. R. App. P. 28.

Moreover, the dissent concedes this issue is non-jurisdictional. As aptly noted by the dissent, non-jurisdictional issues can be resolved by a defendant filing a bill of particulars or a motion to dismiss. Defendant did neither here.

demonstrated by the plain language of the statute, legislative intent is clear. The dissent concludes that "recruits," "entices," and "obtains" are synonymous words. However, the very definitions used in the dissent belie that conclusion. For example, the dissent defines "recruit" as "enrolling," and "entice" as "luring or inducing." Clearly these words mean different things. It is not synonymous that students enroll in school every year, and that schools are luring their students every year.

### 2. Sufficiency of Indictment

The indictment was sufficient to put defendant on notice because it contained the necessary elements of the offense.[6] Section 15A-924 of the North Carolina General Statutes codifies the requirements for an indictment.

> [I]t is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime.

*State v. Creason*, 313 N.C. 122, 130 (1985) (alteration in original) (quoting *State v. Sturdivant*, 304 N.C. 293, 311 (1981)); *see In re J.U.*, 384 N.C. 618, 624 (2023) ("It is generally held that the language in a statutorily prescribed form of criminal pleading is sufficient if the act or omission is clearly set forth so that a person of common

---

[6] In this case, the State chose to utilize the statutorily provided short-form language containing the necessary elements of the offense. We note, however, that in cases where short-form language for a charged offense is not utilized, an indictment is sufficient when it "alleges facts supporting the essential elements of the offense to be charged." *State v. Newborn*, 384 N.C. 656, 659 (2023).

understanding may know what is intended."). "Generally, the purpose of an indictment is to put the defendant on notice of the crime being charged and to protect the defendant from double jeopardy." *State v. Newborn*, 384 N.C. 656, 659 (2023) (citing *Sturdivant*, 304 N.C. at 311). As noted above, an indictment's "purpose[ ] [is] to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial." *Sturdivant*, 304 N.C. at 311. "[A]n indictment couched in the language of the statute is generally sufficient to charge the statutory offense." *State v. Palmer*, 293 N.C. 633, 638 (1977); *State v. Singleton*, 386 N.C. 183, 213–14 (2024).

In this case, the indictments tracked the language of the statute but included variations for the names of the victims and the date ranges of the alleged violations. The indictments used identical language, which stated:

> [B]etween and including [date range] . . . defendant . . . unlawfully, willfully and feloniously did knowingly or in reckless disregard of the consequences of the action, did recruit, entice, harbor, transport, provide or obtain by any means another person, [victim's name,] with the intent that the other person, [victim's name], be held in sexual servitude. This act was in violation of North Carolina General Statutes Section 14-43.11(a).[7]

Each indictment as written requires the State to satisfy three elements as to

---

[7] This Court has previously rejected the argument that "short-form indictments [which] bear the same language and same time frame . . . lack specific details to link them to specific acts and incidents; thus, the court cannot be sure that jurors unanimously agreed that the State has proved each element that supports the crime charged in the indictment." *State v. Lawrence*, 360 N.C. 368, 373 (2006).

the date range alleged and the specific victim identified therein: (1) defendant "knowingly or in reckless disregard of the consequences"; (2) "did recruit, entice, harbor, transport, provide or obtain by any means [the victim]"; (3) "with the intent that [the victim] be held in sexual servitude." Put simply, the State must prove: (1) defendant's mental state surrounding his conduct; (2) defendant's actual conduct of obtaining the victim; and (3) defendant's intent when he obtained the victim.

This Court has stated that:

> The general rule is well settled that an indictment or information must not charge a party disjunctively or alternatively in such manner as to leave it uncertain what is relied on as the accusation against him. . . . [W]here a statute specifies several means or ways in which an offense may be committed in the alternative, it is bad pleading to allege such means or ways in the alternative. But where terms laid in the alternative are synonymous, the indictment is good; and where a statute in defining an offense, uses the word 'or' . . . in explanation of what precedes, making it signify the same thing, the indictment may follow the words of the statute. An indictment is not vitiated by an alternative statement in matter which may be rejected as surplusage. *State v. Jones*, 242 N.C. 563, 565 (1955) (first alteration in original).

Here, the State did not charge defendant "disjunctively or alternatively." *Id.* It is necessary to distinguish between alternative means for violating the statute and alternative means to satisfy an element. The indictments do not charge defendant in the alternative because the statute does not provide for alternative offenses. Rather, as discussed above, the statute provides a list of alternative means for satisfying one element of the offense—that defendant obtained, "got," or controlled the victim in

some way. Because the language of the indictment tracks the pertinent statutory language and merely provides alternative means for how defendant obtained the victim in some way, the indictment is sufficient.

Here, none of the indictments rendered the charged offenses uncertain.[8] First, as stated above, the multiple means by which the State may prove an element of the offense are just that—illustrations of alternative ways to control, get, or obtain another person. The statute does not provide for alternative offenses, so defendant was not in doubt as to the charges against him. Thus, the indictment gave defendant sufficient notice of human trafficking charges for which he should prepare a defense.

It should be noted that defendants may not be convicted for *continuous* offenses if the continuous offenses listed in the indictments cover the same date range, as this runs afoul of double jeopardy protections. *State v. Johnson*, 212 N.C. 566, 569–70 (1937). However, as discussed above, the crime penalized by N.C.G.S. § 14-43.11 is not a continuous offense.

The dissent writes that defendant's convictions violate the Double Jeopardy Clause because the indictments do not make certain that defendant was not placed in jeopardy for a subsequent prosecution for the same crime. Yet, as discussed above, "examination of the indictments is not always dispositive on the issue of double jeopardy." *Rambert*, 341 N.C. at 176. "For a plea of former jeopardy to be good it must

---

[8] This Court no longer follows our prior hyper-technical indictment jurisprudence. *See In re J.U.*, 384 N.C. at 624; *Singleton*, 386 N.C. at 195.

be grounded on the same offense both in law and in fact." *Id.* at 175 (extraneity omitted). "Examination of the facts underlying each charge [ ] more accurately illustrates whether defendant has been placed in double jeopardy." *Id.* at 176. For a defendant's double jeopardy claim to prevail, he must show that he had been convicted of numerous offenses for the same prohibited conduct. Here, each offense requires proof of a fact that the others do not. *Brown*, 432 U.S. at 166. As discussed in the Background and Analysis sections above, the law and evidence both demonstrate that defendant's acts were distinct and do not run afoul of double jeopardy principles. *See Rambert*, 341 N.C. at 175–77.

**B. The trial court erred in determining defendant's prior record level; however, this error did not cause any prejudice to defendant.**

Also at issue in this case is whether the trial court erred in calculating defendant's prior record level when defendant did not stipulate to his prior convictions, nor did the trial court compare defendant's federal conviction relevant to his sentencing here to any state offense. The trial court erred in failing to state its finding that defendant's federal conviction at issue was substantially similar to a North Carolina offense. However, such error was harmless.

A determination under subsection 15A-1340.14(e), which governs classification of prior convictions from other jurisdictions, "is a question of law involving comparison of the elements of the out-of-state offense to those of the North Carolina offense." *State v. Sanders*, 367 N.C. 716, 720 (2014) (extraneity omitted). Subsection 15A-1340.14(e) and this Court's precedent in *Sanders* require trial courts to compare

North Carolina offenses and offenses from foreign jurisdictions in order to classify a prior offense as anything higher than a Class I felony. N.C.G.S. § 15A-1340.14(e) (2023). Subsection 15A-1340.14(e), states that "a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony." *Id.* However, "[i]f the offender proves by the preponderance of the evidence that an offense classified as a felony in the other jurisdiction is substantially similar to an offense that is a misdemeanor in North Carolina, the conviction is treated as that class of misdemeanor for assigning prior record level points." *Id.* Substantial similarity may be shown through various listed methods, including "[a]ny other method found by the court to be reliable." *Id.* § 15A-1340.14(f) (2023).

Here, the State classified defendant's prior federal firearms conviction as a Class G felony without furnishing the trial court any evidence to show substantial similarity between the offenses. Additionally, the trial court failed to check the box on the prior record level worksheet indicating that the trial court found the federal conviction was substantially similar to a North Carolina offense. The trial court thus erred in calculating defendant's prior record level because defendant did not stipulate to his prior record level nor did the trial court make a comparison of the elements of the federal offense to any North Carolina offense. Nonetheless, such error was harmless.

While not controlling, in *State v. Riley* the North Carolina Court of Appeals

determined that "the federal offense of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), is substantially similar to the North Carolina offense of possession of a firearm by a felon, N.C.[G.S.] § 14-415.1(a), a Class G felony." 253 N.C. App. 819, 820, 825 (2017). The Court of Appeals noted the record contained sufficient information for the court to make the analysis on its own despite the State's "fail[ure] to meet its burden of proof at sentencing." *Id.* at 825. In rendering its decision, the Court of Appeals reached "the almost inescapable conclusion that both offenses criminalize essentially the same conduct—the possession of firearms by disqualified felons." *Id.* at 827.

"In order to demonstrate prejudicial statutory error in accordance with N.C.G.S. § 15A-1443(a), defendant would have to prove that there was a reasonable possibility that, had the trial [conformed to the statutory requirement], a different outcome would have resulted at his trial." *Flow*, 384 N.C. at 549. Here, although the trial court erred, defendant has failed to show he was prejudiced by the error because his federal firearms conviction is substantially similar to a Class G felony in North Carolina. If the trial court's judgment was vacated and the matter remanded for resentencing, defendant's sentence would not change. Thus, no prejudicial error occurred at defendant's sentencing.

## IV.  Conclusion

Accordingly, we find no prejudicial error and affirm the decision of the Court of Appeals.

-19-

AFFIRMED.

Justice DIETZ did not participate in the consideration or decision of this case.

Justice RIGGS concurring in part and dissenting in part.

Human trafficking is an egregious crime, and that fact does not give this Court the right to interpret criminal laws in a way that violates the Double Jeopardy Clause of the United States Constitution. Mr. Applewhite will spend the rest of his natural life incarcerated even under the constitutional interpretation of the statute put forth in this dissent. Our obligation is to ensure that ambiguous statutes, such as the one at bar here, are interpreted consistent with the Constitution, no matter how odious the crime.

Generally, the Court considers statutory language that is "equally susceptible to multiple interpretations" to be ambiguous. *Winkler v. N. C. State Bd. of Plumbing, Heating, & Fire Sprinkler Contractors*, 374 N.C. 726, 730 (2020). The language in the human trafficking statute, N.C.G.S. § 14-43.11 (2021), is open to multiple reasonable interpretations and therefore, is ambiguous, contrary to the majority's assertion. Significantly, the statutory language can be reasonably interpreted to punish the same conduct twice, violating the Double Jeopardy Clause. Further, the indictments in this case are insufficient to make certain that Mr. Applewhite is not placed in jeopardy in a subsequent prosecution for the same crime.

When a statute is ambiguous, the Court interprets the statute by considering "the language of the statute, the spirit of the statute, and what it seeks to accomplish." *State v. Barnett*, 369 N.C. 298, 304 (2016) (quoting *State ex rel. Utils.*

*Comm'n v. Pub. Staff*, 309 N.C. 195, 210 (1983)). When we interpret statutes, it is fundamental that we interpret the statute consistently with the Constitution. *See In re Banks*, 295 N.C. 236, 239 (1978) ("A well recognized rule in this State is that, where a statute is susceptible to two interpretations—one constitutional and one unconstitutional—the Court should adopt the interpretation resulting in a finding of constitutionality."). Still, statutory construction does not demand that this Court give words the most strained meaning in order to avoid a constitutional problem; "words are given their fair meaning in accord with the manifest intent of the [legislature]." *State v. Jones*, 358 N.C. 473, 478 (2004) (quoting *United States v. Brown*, 333 U.S. 18, 25–26 (1948)) (recognizing statutory construction should not override common sense and evident statutory purpose by giving statutory language the narrowest meaning). The Court must construe statutes "mindful of the criminal conduct that the legislature intends to prohibit," *State v. Rankin*, 371 N.C. 885, 889 (2018), which in this statute is the entrapment of vulnerable victims in a state of involuntary sexual servitude.

I agree with the majority that some of the activities identified in the statute could represent multiple offenses against a single victim—but only if the charges are based upon distinct acts and the indictment gives "notice sufficient to prepare a defense and to protect against double jeopardy." *State v. Lancaster*, 385 N.C. 459, 462 (2023) (quoting *In re J.U.*, 384 N.C. 518, 623 (2023)). However, on the facts of this case, I would hold that the indictments are only sufficient to support one count of

human trafficking per victim within the dates provided in the indictment. For this reason, I respectfully dissent from the majority's reading of the statute and its application here. I concur with the majority's holding that Mr. Applewhite was not prejudiced by the trial court's error in failing to compare the elements of his federal firearm conviction to the elements of a similar North Carolina offense.

## I.     Analysis

### A. N.C.G.S. § 14-43.11 is Ambiguous.

Subsection (a) of the statute does not clearly state whether the six activities—"recruits, entices, harbors, transports, provides, or obtains by any other means"—represent separate offenses or alternative means of committing the same offense of human trafficking. N.C.G.S. § 14-43.11(a). The language can be reasonably interpreted as identifying six separate offenses for human trafficking in the same way that the drug trafficking statute, N.C.G.S. § 90-95(a)(1) (2023), establishes that sale and delivery, possession, and manufacturing of drugs represents three separate offenses under the statute. *See State v. Creason*, 313 N.C. 122, 129 (1985) (recognizing that sale and delivery, possession, and manufacturing represent three separate offenses under N.C.G.S. § 90-95(a)(1)); *State v. Aiken*, 286 N.C. 202, 206 (1974) (explaining that the sale of controlled substances is a separate offense from possession because a defendant can sell a substance which he does not possess and possess a substance that he does not sell). In contrast, the activities listed in the human trafficking statute can also be read to only represent alternative means of

committing a single offense of human trafficking in the same way that N.C.G.S. § 14-202.1 establishes different means of committing the crime of taking indecent liberties with a child. *See* N.C.G.S. § 14-202.1 (2023); *State v. Hartness*, 326 N.C. 561, 564–65 (1990) (explaining "any immoral, improper, or indecent liberties" represent different means falling within the ambit of N.C.G.S. § 14-202.1). The majority adopts the latter view, reading the enumerated activities in the human trafficking statute as alternate means of committing human trafficking but also reads subsection (c) to allow each activity to represent a separate offense against a single victim. But the fact that the majority reads the statute in a manner where the activities are both alternate means of committing the offense of human trafficking and separate offenses only reinforces the ambiguity of the statute.

I agree with the majority that the statute provides for multiple charges related to a single victim so long as each charge is based upon a distinct act. However, the majority glosses over the meaning of "distinct act" without analyzing whether the synonymous nature of the enumerated means of holding a victim in involuntary or sexual servitude could lead to multiple charges based upon the same conduct (or indeed, represents a distinct act). In doing so, the Court is interpreting the statute in a way that creates multiple punishments for the same distinct act in violation of double jeopardy protection. *See State v. Irick*, 291 N.C. 480, 502 (1977) ("[D]ouble jeopardy is designed to protect an accused from double punishment as well as double trials for the same offense.").

While several of the six activities identified in the statute represent distinct acts of human trafficking, some do not represent distinct acts. "Harbor" and "transport" represent two distinct means of holding a victim in servitude, and "provide" represents a means "[t]o furnish [or] supply" a victim for servitude. *Provide*, The American Heritage College Dictionary (3d ed. 1997). However, "recruits," "entices," and "obtains" are synonymous words related to bringing a victim into servitude. "Recruit" is defined as "enroll[ing] (someone) as a member or worker in an organization," *Recruit*, New Oxford American Dictionary (3d ed. 2010), while "entice" means "lur[ing] or induc[ing]; esp[ecially], to wrongfully solicit (a person) to do something," *Entice*, Black's Law Dictionary (12th ed. 2024). "Obtain," as the majority notes, means "bring[ing] into one's own possession; [ ] procu[ing], esp[ecially] through effort." *Obtain*, Black's Law Dictionary (12th ed. 2024).[1] The majority's flippant analogy that enrolling students in school is different from luring a student into school fails to consider the definitions of the words in the statutory context. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989))). This is not a statute about school enrollment.

---

[1] The fact that the statute states "obtains by any other means" does not dictate that the verbs listed prior to that are legally understood as means of committing the same offense rather than separate offenses—"by any other means" simply describes and expands the verb "obtain."

It is a criminal statute about actions executed with the intent to hold victims "in involuntary servitude or sexual servitude." N.C.G.S. § 14-43.11(a).

In the context of human trafficking, recruiting, enticing, and obtaining are all means of bringing a victim into involuntary or sexual servitude. In this case, the State alleged that Mr. Applewhite offered the victims free heroin to get them addicted and then forced them to engage in prostitution to pay him for the heroin. Based on the State's evidence, providing heroin to the victims to lure them into the trafficking ring serves equally to "recruit[ ]," or "entice[ ]" them into the illegal program or to "obtain[ ]" them. In the context of this statute, there is no legally significant definitional daylight between the plain usage of the statute's three problematic verbs that would make "enroll[ing] (someone) as a member or worker in an organization," *Recruit*, New Oxford American Dictionary (3d ed. 2010), "lur[ing] or induc[ing] . . . esp[ecially], to wrongfully solicit (a person) to do something," *Entice*, Black's Law Dictionary (12th ed. 2024), and "bring[ing] into one's own possession; [ ] procu[ing], esp[ecially] through effort," *Obtain*, Black's Law Dictionary (12th ed. 2024), so distinct that it is reasonable to consider them three separate offenses.[2] The "by any other means" language supports this interpretation by expanding the statute

---

[2] This is not to say that a defendant may not be charged with recruiting the same victim multiple times. As the State suggested during oral argument, if a victim leaves the involuntary servitude but then is recruited back into servitude by a defendant, then the defendant could be charged with multiple counts against the same victim, but more specificity would be required by the State to establish each charge. Oral Argument at 32:15, *State v. Applewhite*, No. 39A22 (N.C. Aug. 23, 2024), https://www.youtube.com/watch?v=SaTrwzNAwSo.

to ensure that any means used to bring a victim into involuntary or sexual servitude can serve as the basis for a human trafficking charge so long as it is based upon a distinct act.

**B. The Majority's Statutory Construction of N.C.G.S. § 14-43.11 Allows for Multiple Punishments for the Same Conduct.**

In construing an ambiguous criminal statute, the legislative intent controls the interpretation. *Jones*, 358 N.C. at 478. All parts of the statute dealing with the same subject are to be construed together, and every part shall be given effect if it can be done by fair and reasonable interpretation. *State v. Tew*, 326 N.C. 732, 739 (1990). In construing ambiguous criminal statutes, the Court applies the rule of lenity, which requires that the statute be strictly construed against the State. *See State v. Hinton*, 361 N.C. 207, 211–12 (2007) (recognizing that the rule of lenity applies to construe ambiguous criminal statutes); *United States v. Santos*, 553 U.S. 507, 514 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendant subjected to them."). Any doubt as to punishment "will be resolved against turning a single transaction into multiple offenses." *State v. Conley*, 374 N.C. 209, 213 (2020) (quoting *State v. Smith*, 323 N.C. 439, 442 (1988)).

By comparison to other statutes intending to deal with far-reaching criminal enterprises, in creating the human trafficking statute, the legislature obviously sought to criminalize the insidious operation of human trafficking by casting a wide net to ensnare all aspects of a human trafficking operation and hold all who engage in any aspect responsible for such role, similar to the way Congress sought to address

complex racketeering schemes. *See, e.g.*, 18 U.S.C. § 1959(a) (enumerating the wide range of crimes that can be committed for the purpose of joining a racketeering enterprise to include murder, kidnapping, maiming, assault, or a threat to commit a crime of violence). While we must construe the statute "mindful of the criminal conduct the legislature intends to prohibit," *Rankin*, 371 N.C. at 889, the Court may not increase the penalty the statute "places on an individual when the [l]egislature has not clearly stated such an intention," *Conley*, 374 N.C. at 212 (quoting *State v. Garris*, 191 N.C. App. 276, 284 (2008)).

The constitutional guarantee against double jeopardy protects a defendant from multiple punishments for the same distinct conduct. *See State v. Sparks*, 362 N.C. 181, 186 (2008) (recognizing that the constitutional prohibition against double jeopardy protects three distinct abuses including multiple punishments for the same offense). In the context of multiple violations of a single statute, the Supreme Court of the United States has acknowledged that when the legislature "has the will, that is, of defining what it desires to make the unit of prosecution" it can do so, but when the legislature "leaves to the [j]udiciary the task of imputing . . . an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83 (1955) (holding that under the Mann Act, a defendant who transported two women on the same trip and in a single vehicle could only be charged with a single offense and not be subjected to cumulative punishment). Any ambiguity as to the unit of prosecution—that is the particular course of conduct defined by statutes as a

distinct offense— should be resolved in favor of the defendant under the rule of lenity. *Id.*; *see also Sanabria v. United States*, 437 U.S. 54, 69–70 (1978) (describing an "allowable unit of prosecution" as the particular course of conduct defined by statute as a distinct offense). This Court applied this principle in the context of a North Carolina statute criminalizing obscene literature and exhibitions. *Smith*, 323 N.C. 439. In *Smith*, this Court concluded that the applicable statute "exhibits no clear expression of legislative intent to punish separately and cumulatively for each and every obscene item disseminated, regardless of the number of transactions involved." *Id.* at 442 (cleaned up). The Court held that "until the General Assembly unambiguously declares a contrary intent, we should assume that a single sale . . . does not spawn multiple indictments." *Id.* at 444 (cleaned up).

Similarly, here, the legislature fails to unambiguously define the unit of prosecution for human trafficking and this Court must resolve any ambiguity as to the unit of prosecution in favor of lenity. While subsection (c) makes clear that a defendant may face multiple charges for a single victim by employing the language that "[e]ach violation of this section constitutes a separate offense," N.C.G.S. § 14-43.11(c), this language does not demonstrate legislative intent to allow multiple charges based upon the same conduct. This ambiguity on the unit of prosecution should be resolved in favor of lenity. *See Hinton*, 361 N.C. at 211 (recognizing the "rule of lenity" requires courts to construe ambiguity in a criminal statute in favor of the defendant); *Smith*, 323 N.C. at 442–44 (acknowledging that courts must construe

ambiguity regarding the allowable unit of prosecution against the State and in favor of lenity).

When the legislature uses duplicative terms, this Court has looked at the conduct the legislature seeks to prevent to determine if the terms represent separate offenses. *See Creason*, 313 N.C. at 129 (holding that in the context of drug trafficking, "sell or deliver" is one offense that criminalizes placing drugs into the stream of commerce); *State v. Jones*, 242 N.C. 563, 565–66 (1955) (recognizing that the terms "build" or "install" as used in a health board ordinance are synonymous because the gist of the offense is failure to get a permit). Looking at the conduct the legislature intends to prevent, the synonymous terms "recruit," "entice," and "obtain" can, in the context of human trafficking, represent the same conduct of bringing a victim into involuntary or sexual servitude. *See State v. Rambert*, 341 N.C. 173, 176 (1995) (recognizing that an examination of the facts underlying each charge may be necessary to show that the defendant was not charged with the same offense for the same act but was charged with distinct acts and therefore, was not placed in double jeopardy).

Additionally, the plain language of the anti-merger language in subsection (c) does not demonstrate legislative intent to allow multiple charges based upon the same conduct. Indeed, the majority's interpretation of the anti-merger language gives it the same meaning as the prior clause in this subsection—"each violation of this section constitutes a separate offense." The majority's interpretation renders the

anti-merger clause superfluous, completely redundant to the first clause in the subsection. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 387 (2012) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

Importantly, the majority's interpretation undermines the legislative intent. The legislative history demonstrates that the anti-merger language operates to keep the crime of human trafficking from merging with offenses under other statutes, including kidnapping under N.C.G.S. § 14-39, involuntary servitude under N.C.G.S. § 14-43.12, and sexual servitude under N.C.G.S. § 14-43.13. *See* N.C.G.S. §§ 14-39, -43.12, -43.13 (2023). The 2006 legislation in which the General Assembly established the crime of human trafficking also created the separate offenses of involuntary servitude and sexual servitude. An Act to Protect North Carolina's Children/Sex Offender Law Changes, S.L. 2006-247, § 20(b), 2006 N.C. Sess. Laws 1065, 1084. Those two statutes include the same anti-merger language as in the statute at issue in this case—"[e]ach violation of this section constitutes a separate offense and shall not merge with any other offense." *Id.* Additionally, in that same legislative session, the legislature added language to the kidnapping statute that made confining a person for the purpose of human trafficking a crime under the kidnapping statute. *Id.* § 20(c). Thus, to interpret subsection (c) consistent with the legislative intent and to avoid rendering the last clause superfluous, I would hold that the anti-merger language in the human trafficking statute in subsection (c) ensures that the offense

of human trafficking does not merge with the offenses of kidnapping, involuntary servitude, and sexual servitude. *See* N.C.G.S. § 14-43.11(c).

In sum, the plain language of the human trafficking statute, N.C.G.S. § 14-43.11, can support multiple reasonable interpretations. Therefore, to interpret the statute in a manner that does not violate the prohibition against double jeopardy but also effectuates the will of the legislature, I would hold that the three means of "recruit[ing]," "entic[ing]," and "obtain[ing] by any means" can only represent multiple offenses of bringing a victim into involuntary or sexual servitude if the indictment meets the particularity standards articulated in the section below.

## C. The Indictments Were Insufficient to Avoid Double Jeopardy in a Subsequent Prosecution.

Even though the statute allows nonduplicative separate offenses against a single victim, the indictments in this case do not make certain that in a subsequent prosecution, Mr. Applewhite will not be charged with the same crime. *See State v. Gardner*, 315 N.C. 444, 454 (1986) ("[W]hen a person is acquitted of or convicted and sentenced for an offense, the prosecution is prohibited from subsequently . . . indicting, convicting, or sentencing him a second time for that offense . . . ."). The purpose of an indictment, as the majority recognizes, is to "identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State

more than once for the same crime."[3]  *Creason*, 313 N.C. at 130 (quoting *State v. Sturdivant*, 304 N.C. 293, 311 (1981)); *accord State v. Singleton*, 900 S.E.2d 802, 821 (N.C. 2024) ("An indictment might fail to satisfy constitutional purposes by failing to provide 'notice sufficient to prepare a defense and to protect against double jeopardy' " (quoting *Lancaster*, 385 N.C. at 462)).  But the prosecutor must charge the multiple offenses in a manner as to eliminate any doubt as to the nature of the offenses to which the defendant must answer and to protect against double jeopardy.  *See State v. Freeman*, 314 N.C. 432, 435 (1985) (acknowledging the "long held view" of this Court that one of the purposes of an indictment is putting the defendant "in a position to plead prior jeopardy if he is again brought to trial for the same offense").

An indictment cannot be sufficient if it does not make certain a prosecutor cannot bring a charge for the same conduct in a subsequent prosecution.  *See State v. Greer*, 238 N.C. 325, 327 (1953) (recognizing that a valid indictment must "protect the accused from being twice put in jeopardy for the same offense").  Double jeopardy protects against a second prosecution for the same offense following an acquittal, a second prosecution for the same offense following a conviction, and multiple

---

[3] Because the indictment alleged a crime, the defect in the indictment is not jurisdictional.  Under Rule 10(a)(1) of the Rules of Appellate Procedure, the question of whether a criminal charge is sufficient in law is automatically preserved for review.  N.C. R. App. P. 10(a)(1).  Because Mr. Applewhite is alleging a constitutional error, we use the test found in N.C.G.S. § 15A-1443(b) to determine whether the error was prejudicial.  N.C.G.S. § 15A-1443(b) ("A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt.  The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.").

punishments for the same offense. *State v. Thompson*, 349 N.C. 483, 495 (1998). In this case, if Mr. Applewhite faced subsequent prosecution for human trafficking for these victims during the same time frames alleged in the indictments, there would be no way to know if he was facing a second prosecution for the same offense.

Here, the State indicted Mr. Applewhite for multiple counts of human trafficking against each victim simply replicating the statutory language. The indictments do not differentiate the multiple charges on the basis of the date the offense occurred or on the basis of the means Mr. Applewhite used—i.e., "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], or obtain[ing] by any other means." *See* N.C.G.S. § 14-43.11(a). For example, Mr. Applewhite was acquitted of two charges of human trafficking against J.O. Neither the indictments nor the jury verdicts indicate the conduct that was the basis of the charges for which he was acquitted. Therefore, a prosecutor cannot bring subsequent charges against Mr. Applewhite for the human trafficking of J.O. during the same date range. Any subsequent charges of human trafficking within the date range would present a risk of a second prosecution for the same offense for which he was already acquitted. *See State v. Oldroyd*, 380 N.C. 613, 620 (2022) (concluding that an indictment must convey "the exactitude necessary to place [the defendant] on notice of the event or transaction against which he was expected to defend, to protect [the] defendant from being placed in jeopardy twice for the same crime").

Also, Mr. Applewhite was convicted of three counts of human trafficking as to

the victim A.B., and all the charges have the same date range. Neither the indictments nor the jury verdicts specify the means that Mr. Applewhite used to commit the offense for which he was convicted. To explain, imagine a prosecutor decided to indict Mr. Applewhite again for human trafficking of A.B. during the same date range—there is no way to know if the new charge represents a duplicative means, the same means, or a different means of the offense for which the jury has already convicted him. Therefore, a new indictment within the same date range, even if the new indictment specifies the means and the date, could put him in jeopardy for an offense for which he was already convicted.

To be sure, in this case, the State presented evidence of the crimes this defendant committed against each victim. However, neither the indictments nor the jury verdict clarified the distinct acts that served as the basis for each means charged and each conviction. During the charge conference, even the trial court asked the prosecutor how to distinguish the charges so that the jury could differentiate between the charges it was considering. However, the prosecutor did not provide any means of identifying the conduct that was the basis of each charge, and even now, the majority does not, because it cannot, delineate in the facts the conduct that served as the basis for each charge in this case.

Therefore, the indictments, in this case, are insufficient to make certain that in subsequent prosecutions, Mr. Applewhite is not placed in jeopardy again for the same crime. The insufficiency in the indictments is not, however, jurisdictional in

nature because the indictments allege the crime of human trafficking. *See Singleton*, 900 S.E.2d at 805 (holding that an indictment raises jurisdictional concerns only when it wholly fails to charge a crime against the laws or people of this state).[4] In order to resolve these types of non-jurisdictional defects in an indictment, a defendant can request a bill of particulars or file a motion to dismiss under N.C.G.S. § 15A-952(b)(6)(c). *See* N.C.G.S. § 15A-952(b)(6)(c) (2023).

## II.    Conclusion

In sum, I would hold that a defendant can be charged with multiple counts of human trafficking against a single victim so long as each count is based upon a distinct act. However, the indictment must allege the multiple offenses in a manner that provides the defendant with notice and protection against double jeopardy.

In this case, the indictments do not shed light on the specific conduct the State alleged to support multiple counts of human trafficking against each victim. Therefore, I would hold the indictments here are only sufficient to support a single count of human trafficking against each victim. For these reasons, I respectfully dissent.

Justice EARLS joins in this concurring in part and dissenting in part opinion.

---

[4] The fact that the inadequacies in the indictment are not jurisdictional by no means suggests that those inadequacies cannot rise to a constitutional level, particularly given the majority's interpretation of the statute. All this means is that we do not suggest that the entirety of Mr. Applewhite's convictions should be overturned because of the indictments.